IN THE SUPREME COURT OF MISSISSIPPI
NO. 1998-KA-01419-SCT

*WALTER HOGAN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/17/1997 |
| TRIAL JUDGE: | HON. FRANK A. RUSSELL |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS M. BRAHAN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | JOHN RICHARD YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/10/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/2/2000 |

## EN BANC.

## PRATHER, CHIEF JUSTICE, FOR THE COURT:

### STATEMENT OF THE FACTS AND CASE

¶1. On the evening of June 5, 1996, Charles West ("Mr. West"), age 84, and his 81-year old wife Opel West ("Mrs. West") were relaxing in their home in Aberdeen. Mr. West testified that, around 8:30 p.m., he decided to go into the kitchen in order to get the medicine which he customarily took around that time. When Mr. West entered the dining room, he encountered two intruders. Mr. West testified that, upon entering the dining room, he was immediately shot in his right side by the taller of the two intruders and thrown against his china cabinet. The intruders then took Mr. West's wallet from his pocket.

¶2. Upon hearing the gunshot, Mrs. West ran into the dining room and tried to knock the gun out of the intruder's hand. The taller intruder then shot Mrs. West in her shoulder, whereupon Mr. West managed to go into his bedroom and get his pistol. Upon returning to the dining room, Mr. West testified that:

> Well, my wife was laying there screaming and bleeding, and they was gone. They had done run out the back door the same way they came in.

West testified that he gotten a good look at the taller of the two intruders:

> I got a right good look at the one - - the tall one in front that shot me, but the one behind, of course,

when they shot me, they piled in on me and I didn't get to see him too good.

Mr. West conceded on cross-examination, however, that the intruders had masks or some other garment covering their faces and that he had told the police that he could only identify the intruders as being black males.

¶3. Walter Hogan, along with his first cousin Otey Hogan, were indicted and convicted on one count of armed robbery, one count of burglary of a dwelling, and two counts of aggravated assault. Walter was sentenced to serve 30 years in the custody of the Mississippi Department of Corrections on count 1, 20 years on count 2, and 15 years each on counts 3 and 4. Contending that the evidence presented at trial was insufficient to support his conviction, Walter appealed to this Court.

### ISSUE

**The jury's verdict was not supported by substantial evidence and the trial judge erred in overruling the Appellant's Motion for JNOV, or, alternatively, a new trial.**

¶4. Walter's sole argument is that the evidence presented at trial was insufficient as a matter of law to support his convictions in the present case. Upon conviction of the criminal defendant, the presumption of innocence is replaced by a presumption that the conviction is valid and may only be rebutted by a finding of reversible error on appeal. *Gollott v. State*, 646 So.2d 1297, 1300 (Miss.1994). When a defendant challenges the sufficiency of the evidence to support a conviction, the evidence which supports the verdict is accepted as true by the reviewing court, and the State is given the benefit of all reasonable inferences flowing from the evidence. *Rhodes v. State*, 676 So.2d 275, 281 (Miss.1996).

¶5. Here, there is ample evidence in the record supporting Walter's conviction. Detective Pete Conwill was assigned to investigate the shootings, and he was able to obtain a palm print from a washing machine in the house. Conwill testified that he chose to dust this washing machine for fingerprints because the machine was near the intruders' likely entry point into the house. Specifically, Conwill testified that:

> And as you enter the laundry room from the patio, there is some steps there and the washing machine is sitting on your left just as you come inside at the top of those steps. At that point, I thought it would be normal or natural for someone to assist themselves by placing their hand on that washing machine, and that is why it was processed.

Ken Gill, a fingerprint examiner with the Mississippi Crime Laboratory in Batesville, testified that, in his opinion, the palm print from the washing machine was that of Otey Hogan. The Wests testified that they were unaware of Otey or Walter Hogan ever having been in their house.

¶6. The presence of Otey's palmprint in the house is highly incriminating of Walter when considered in light of testimony placing both Otey and Walter in the immediate vicinity of the Wests' house at the time of the crime. Bernice Stewart testified that, around 6 p.m. on June 5, she observed Walter and Otey walking on Monroe Street in the direction of the Wests' home on Franklin Street. Stewart testified that she observed the pair once again around 7:15 p.m., this time near the corner of Franklin and High Street. Stewart testified that:

> They was right there - - the street - - all they had to do is go around the corner. Then they would be at those folks' [the Wests] house on Franklin Street.

Stewart considered the presence and appearance of the pair sufficiently suspicious to call the police after spotting them the second time. Stewart further testified that she knew Walter and Otey and that she was positive in her identification of the pair.

¶7. Tara Hoskins, a high school student and neighbor of the Wests, testified that she was hanging clothes in her yard on June 5 when she saw two men walking up and down Franklin Street. Hoskins testified she recognized one of the men as Walter Hogan, a former schoolmate of hers. Hoskins testified that she observed Walter standing in front of the Wests' house and that he appeared to be looking around to see if anyone was watching him. Hoskins testified that she later observed Walter and the other man, with whom she was not acquainted, lying down in front of the Wests' house.

¶8. Walter argues that the testimony placing him at the scene of the crime was insufficient to rebut the alibi testimony presented on his behalf. Minnie Hogan, Walter's mother, and Andre Hogan, Walter's brother, both testified that Walter came into their house a little after 8 p.m. on the night of the shootings and that he stayed there until around 10:00 p.m. Mary Garth, the mother of Walter's son, testified that she received a telephone call from Walter between 8:00 p.m. and 8:30 p.m. on the night of the shootings. Garth testified that she could tell that Walter was calling from his mother's house since she could hear Walter's younger brother talking in the background.

¶9. In light of this testimony, Walter argues that:

> The reasonable hypothesis consistent with innocence in this case is that Walter Hogan was at the home of Minnie Hogan when the crime happened, and that Tara Hoskins is either lying or mistaken in her identification of Walter Hogan as having been lying in the bushes behind the Wests' home. The circumstantial evidence presented by the State is not sufficient to overcome Walter Hogan's alibi evidence.

¶10. This Court disagrees and concludes that the evidence presented at trial was sufficient to allow a reasonable juror to conclude that the State had met its burden of proving Walter's guilt beyond a reasonable doubt.

¶11. Walter's three alibi witnesses were all closely related to him, and the jury could have reasonably concluded that these witnesses were testifying untruthfully in order to protect him. Moreover, the testimony presented by the State was clearly sufficient to allow a reasonable juror to conclude that the testimony placing Walter at his mother's house at the time of the shooting was inaccurate. Finally, the State also presented physical evidence in the form of Otey Hogan's palmprint inside of the Wests' house. When considered in conjunction with the evidence placing Otey and Walter near or outside the Wests' home at the time of the shootings, this physical evidence constitutes powerful evidence against Walter.

¶12. This Court concludes that the evidence presented at trial was legally sufficient to convict Walter of the crimes with which he was charged, and accordingly his convictions and the judgment of the Monroe County Circuit Court are affirmed.

¶13. **COUNT ONE: CONVICTION OF ARMED ROBBERY AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**COUNT TWO: CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SAID SENTENCE SHALL RUN CONSECUTIVE WITH SENTENCE IMPOSED IN COUNT I.**

**COUNT THREE: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SAID SENTENCE SHALL RUN CONCURRENT WITH SENTENCE IMPOSED IN COUNT I.**

**COUNT FOUR: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SAID SENTENCE SHALL RUN CONSECUTIVE WITH SENTENCE IMPOSED IN COUNT I, COUNT II AND COUNT III.**

**BANKS, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. SULLIVAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, P.J., AND McRAE, J.**

**SULLIVAN, PRESIDING JUSTICE, DISSENTING:**

¶14. Because I disagree with the majority's conclusion that there is ample evidence in the record to support Walter's conviction, I respectfully dissent. The palm print found inside the house was that of Otey, not Walter, and is not "highly incriminating" of Walter. There was no evidence presented at trial which placed Walter inside the house, only testimony of witnesses who saw him outside of the house. Walter also offered three alibi witnesses placing Walter at his mother's house at the time of the shooting. The majority ultimately relies on the "physical evidence" of Otey's palm print inside the house, coupled with disputed testimony placing Walter outside of the house with Otey, as legally sufficient to prove that Walter was guilty beyond a reasonable doubt of one count of armed robbery, one count of burglary of a dwelling, and two counts of aggravated assault. The evidence is not legally sufficient to support the conviction. Because the evidence is scant, circumstantial, contradicted, and well short of what is needed to prove all of the elements of the crimes charged beyond a reasonable doubt, Walter's convictions should be reversed and rendered, and he should be discharged.

**PITTMAN, P.J., AND McRAE, J., JOIN THIS OPINION.**