535 A.2d 1130

**COMMONWEALTH of Pennsylvania**

v.

**Richard BIZZARO, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 25, 1987.

Filed Dec. 31, 1987.

Michelle M. Hawk, Erie, for appellant.

Timothy J. Lucas, Assistant District Attorney, Erie, for Com.

Before CAVANAUGH, BROSKY and WIEAND, JJ.

BROSKY, Judge:

This is an appeal from the judgment of sentence following a jury conviction of corruption of minors, indecent assault and involuntary deviate sexual intercourse involving appellant's six-year old daughter.

Appellant presents eight issues for our review:

I. Whether the trial court erred in allowing Dr. Fagenholz to testify as to her opinion of the truthfulness of the child-victim's version of events.

II. Whether appellant's Sixth Amendment right of confrontation was violated when the court permitted the introduction into evidence of the victim's statement under an exception to the hearsay rule but the victim herself never testified.

III. Whether the trial court erred in refusing to grant appellant's motion that the child-victim's testimony be videotaped for use at trial.

IV. Whether the trial court erred in refusing to instruct the jury that the victim's statements, which were admitted under an exception to the hearsay rule, should not be considered as substantive evidence.

V. Whether there was sufficient evidence to convict appellant since the victim's statements, which were admitted under an exception to the hearsay rule, did not constitute substantive evidence.

VI. Whether the trial court erred in not allowing appellant to call to the witness stand Larry Bizzaro, the defendant's brother, who would have admitted that he was present in the house on January 10, 1986, who has a prior conviction for sexual assaults on children, and who confessed to the sexual abuse of Annie Bizzaro.

VII. Whether the trial court erred in not allowing appellant to call Robert Workman to the stand to estab-

lish that Larry Bizzaro had confessed to sexually assaulting Annie Bizzaro.

VIII. Whether the trial court erred in refusing to charge the jury that it could not consider the truthfulness of appellant's confession when considering the voluntariness of that confession.

We vacate the judgment of sentence and remand for entry of an order of abatement upon record certification of appellant's death.

Initially, we are confronted with an unusual problem focusing on the status of this case before us. Our determination whether to address the merits of this appeal and, assuming we do, the appropriate disposition thereof hinge upon our resolution of this preliminary concern.

At oral argument, this Court was advised by appellant's counsel that appellant had since died. This fact was not disputed by the Commonwealth. Counsel for appellant then requested us to consider this matter on the merits, nonetheless. Pennsylvania Rule of Appellate Procedure 502(a) permits any party to make a suggestion of death on the record. The Rule then states that proceedings may be had as this court directs. The open-endedness of this Rule is evident. However, the weight of authority in this Commonwealth is that the death of an appellant pending appeal does not moot the appeal. *Commonwealth v. Walker*, 447 Pa. 146, 288 A.2d 741 (1972); *Commonwealth v. Sargent*, 253 Pa.Super. 566, 385 A.2d 484 (1978); *Commonwealth v. Culpepper*, 221 Pa.Super. 472, 293 A.2d 122 (1972).

In *Commonwealth v. Walker, supra,* counsel for the then deceased appellant filed a petition requesting that, because of his client's decease, the appeal be dismissed and appellant's conviction for homicide be abated *ab initio*. The Commonwealth concurred in the request to dismiss the appeal but opposed abatement of the proceedings *ab initio*. The Supreme Court rejected both motions and stated:

We ... believ[e] instead that it is in the interest of both a defendant's estate and society that any challenge initiated by a defendant to the regularity or constitutionality of a

criminal proceeding be fully reviewed and decided by the appellate process.

*Id.* 447 Pa. at 148, n. \*, 288 A.2d at 742, n. \*.

The Court then affirmed the judgment of sentence on the merits. Here, unlike *Walker*, neither the Commonwealth nor appellant's counsel requested abatement of the proceedings or dismissal of the appeal. Rather, appellant's counsel requested this court to consider the merits of this appeal despite appellant's death, and the Commonwealth voiced no opposition.

In *Commonwealth v. Sargent, supra,* our Court considered the merits of the appeal even though the co-defendant/appellant, George Lee, had since died. There, we vacated both judgments of sentence and, due to improper and prejudicial prosecutorial remarks made in summation, we reversed and remanded for a new trial. It does not appear that any request to consider or dismiss the appeal or abate the proceedings was made to this court.

Finally, in *Commonwealth v. Culpepper, supra,* we vacated a then deceased appellant's judgment of sentence on double jeopardy grounds after the trial court declared a mistrial. As in *Commonwealth v. Walker, supra,* the Commonwealth sought dismissal of the appeal on the basis of mootness. However, unlike the *Walker* case, appellant's counsel objected and, instead, asked this Court to address the merits "in the interests of justice." *Commonwealth v. Culpepper, supra,* 221 Pa.Super. at 477, n. 3, 293 A.2d at 124, n. 3. We agreed to do so, relying upon the rationale of *Commonwealth v. Walker, supra.*

█ Consonant with the directive of our Supreme Court and the teaching of this court, we, too, consider it proper, in the interests of justice, to address the merits of this appeal, especially since counsel for appellant, at oral argument, requested that we do so, and the Commonwealth proffered no objection.

█ However, the more troubling problem looming before us revolves around the appropriate disposition to be made

here, considering the unique feature of an unavailable-for-retrial defendant and compounded by our determination, based upon examination of the record and the parties' briefs, to grant relief to appellant. Normally, our assessment of a record containing like errors would lead us to conclude that a new trial is warranted, and we would so order. Because we are not oblivious or insensitive to the difficulties attendant to the trial of a defendant who is unable to be present to defend himself, we will remand to the trial court for the entry of an Order of abatement upon record certification of appellant's death. We believe this procedure to be the one which best resolves the unique factual situation at hand.

We now proceed to address the merits of this appeal. Appellant protests the allowance of testimony by Dr. Linda Fagenholz, a board-certified pediatrician who examined the victim, concerning the veracity of the child-victim's delineation of the events which resulted in the instant charges. *See,* particularly, N.T., 7/11/86, 64, 81, 82, 84. As a corollary argument, appellant complains that his Sixth Amendment right to confrontation was violated when the trial court permitted Dr. Fagenholz's testimony in this regard.

■ Our Supreme Court addressed this same child veracity issue in *Commonwealth v. Seese,* 512 Pa. 439, 517 A.2d 920 (1986), where it held that the trial court erred in permitting a board certified pediatrician to testify regarding the veracity of eight-year old victims of sexual abuse:

> It is an encroachment upon the province of the jury to permit admission of expert testimony on the issue of a witness' credibility. *Commonwealth v. O'Searo,* 466 Pa. [224] at 228–229, 352 A.2d [30] at 32 [ (1976) ]. Indeed, to permit expert testimony for the purpose of determining the credibility of a witness 'would be an invitation for the trier of fact to abdicate its responsibility to ascertain the facts relying upon the questionable premise that the expert is in a better position to make such a judgment.' *Id.*

*Id.,* 512 Pa. at 443–44, 517 A.2d at 922.

·      ·      ·      ·      ·

Such testimony, admitted as evidence, would encourage jurors to shift their focus from determining the credibility of the *particular* witness who testified at trial, allowing them instead to defer to the so-called "expert" assessment of the truthfulness of the class of people of which the particular witness is a member. In addition, such testimony would imbue the opinions of "experts" with an unwarranted appearance of reliability upon a subject, veracity, which is not beyond the facility of the ordinary juror to assess.

*Id.*, 512 Pa. at 444, 517 A.2d at 922. (Emphasis in text). Consequently, we hold that *Commonwealth v. Seese, supra*, squarely addresses this issue, and no further elaboration on this point is necessary.

Similarly, we find support for appellant's contention—that he be permitted to confront the child victim through the use of videotaping—in a recent *en banc* decision of this Court authored by Judge Wieand and joined in by the author of this Opinion. *Commonwealth v. Ludwig*, 366 Pa.Super. 361, 531 A.2d 459 (1987). The *Ludwig* court held that the confrontation clause is satisfied by the use of closed circuit television [1] to enable the child victim to testify despite any constitutional or statutory "face-to-face" requirement. It stated:

1. *Ludwig* held that the testimony of a child victim may be taken by closed circuit television during the trial itself with provision for cross-examination. As the court there correctly acknowledged, this is now legislatively provided for. 42 Pa.C.S.A. § 5985(a). *See* 366 Pa.Superior Ct. at 369, n. 7, 531 A.2d at 463, n. 7. In the case at bar, appellant requested in Chambers before trial that the child victim's testimony be videotaped for use at trial. A fair reading of the trial transcript in this regard leads to the conclusion that appellant actually requested that a videotaped deposition of the child be taken for use at trial pursuant to 42 Pa.C.S.A. § 5984(a). *See*, N.T. 7/14/86, 45–46. He also frames his third issue in this fashion. However, the difference in the medium through which the child's testimony is ultimately communicated is insignificant, especially since the medium utilized in *Ludwig* and the method requested by appellant here, but denied, are now legislatively permitted. Therefore, we hold *Ludwig* to be controlling here. Moreover, we note that *Ludwig* does make citation to cases approving the use of videotaped testimony of the child victim. *See* 366 Pa.Superior Ct. at 367, 531 A.2d at 462.

The use of closed circuit television in child abuse cases, where the child is unable or reluctant to testify against an adult member of the family, is a minimally intrusive infringement on the right of confrontation. Considerations of public policy require that testimony from the alleged victim of abuse be received without further psychological injury to the child. So long as the right of cross-examination is preserved in such cases and all interested persons can observe the alleged victim as he or she testifies, the use of closed circuit television is not prohibited by the confrontation clause of the federal or state constitution.[7]

[7] Since the trial of this [the *Ludwig*] case, the legislature has provided by statute for receiving the testimony of child abuse victims by closed circuit television for good cause shown. See: 42 Pa.C.S. § 5985(a).

*Id.*, 366 Pa.Superior Ct. at 369, 531 A.2d at 463.

.    .    .    .    .

The reliability of an abused child's testimony does not depend upon his or her ability to withstand the psychological trauma of testifying in a courtroom under the unwavering gaze of a parent who, although a possible abuser, has also been provider, protector, and parent. The reliability of the child's testimony can be assured in such cases by requiring the child to submit to cross-examination while the jury and the accused observe the demeanor of the witness as he or she responds to questions. In [*Ludwig*] this was accomplished by closed circuit television.

*Id.*, 366 Pa.Superior Ct. at 370, 531 A.2d at 463.

Judge Wieand also addressed the problem of potential inadmissibility of evidence in a criminal proceeding if a contrary result, i.e. a conclusion that the absence of eyeball-to-eyeball contact is inherently unreliable, were achieved by the *Ludwig* court.

If this test is to be deemed an adjunct of the right to confront one's accuser, much of the evidence relied upon by courts of law will be rendered inadmissible. In criminal trials, courts would not be permitted to receive testi-

mony recorded via depositions, testimony given at a prior trial, dying declarations, statements of a conspirator made during a conspiracy, and business and public records. This is not the law, nor should it be. The test advanced by Ludwig would also present potential confrontational problems with respect to blind witnesses, some physically disabled witnesses, and witnesses who refuse to look at an accused while giving testimony. *Id.*, 366 Pa.Superior Ct. at 369–370, n. 8, 531 A.2d at 463, n. 8.

We wish to emphasize that in *Ludwig,* closed circuit television was utilized to enable the child victim to testify against her abuser. The defendant there contested the use of this alternate form of testimony as violative of his right to confrontation. Here, on the other hand, appellant *requested* the trial court to permit videotaping of the child's testimony prior to trial for use at trial. The Commonwealth refused to call the victim, stating that it was not required to do so and, further, that the child was in the Courthouse available to appellant. The trial court refused appellant's request (N.T., 7/14/86, 45–46). The Commonwealth, instead, called Dr. Fagenholz, as set forth *supra* at 1133 and *infra* at 1135. However, we do not consider that the difference between *Ludwig* and the instant matter would require us to reach a contrary result. We read *Ludwig* to stand for the proposition that the allowance of the testimony of a child-victim by alternate means in abuse cases does not violate a defendant's Sixth Amendment right to confront witnesses against him. Appellant's denial of that right here was two-fold: first, his request to "confront" the child-victim by means of videotaping, in his presence, her testimony for use at trial was refused by the trial court; secondly, and in lieu of the requested videotaping, the trial court permitted Dr. Fagenholz to take the stand and make assertions relative to the child's veracity and to testify on the child's behalf, in effect, concerning the events culminating in the charges against appellant.

It is for these errors that we are compelled to vacate appellant's judgment of sentence and remand this matter for the entry of an Order of abatement upon record certification of appellant's death.

.  ..  .  .  .

In a recently published article in the National Law Journal,[2] Professor Wallace J. Mlyniec, Director of the Georgetown University Law Center's juvenile justice clinic, observed that the Framers of the United States Constitution, when fashioning the Confrontation Clause in 1791, could not have envisioned the use of videotapes, closed-circuit television or one-way mirrors now used in modern courtrooms to minimize the emotional trauma of a child-victim testifying in an abuse case.

Professor Mlyniec states, "[Y]ou have to make allowances for the child witness." *Id.* at 1, col. 4. He further explained that because children may be confused easily by defense counsel, especially since they are in a type of setting which is the "absolute antithesis to anything a child should be left in" and lack the communication skills possessed by adults, "[s]ome accommodation ... is not out of the question." *Id.*

The National Law Journal article also states that this Commonwealth is one of twenty-one jurisdictions which allows closed-circuit television to communicate the child-victim's live testimony from another room and one of eighteen jurisdictions that specifically provides that the child-victim shall not see or hear the accused during the child's testimony.[3] *See* 42 Pa.C.S.A. § 5985(a). Moreover, we are among

2. Coyle, *Application of Confrontation Clause A Difficult Issue in Child Abuse Cases*, The Nat'l L.J., November 2, 1987 at 1, col. 2.

3. The other twenty jurisdictions presently allowing the use of closed-circuit television to enable the child-victim to testify during trial are: Alabama, Arizona, Connecticut, Florida, Georgia, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Minnesota, Mississippi, New Jersey, Oklahoma, Rhode Island, Texas, Utah and Vermont. *Id.* at 11, col. 1. The source for this information is the American Bar Association's National Legal Resource Center for Child Advocacy and Protection.

thirty-three other jurisdictions which permit and admit a child's videotaped deposition for use at trial with the opportunity for the defendant to see and hear the child testify, albeit out of sight and hearing of the child.[4] *See* 42 Pa.C.S.A. § 5984(a).[5]

Thus, for the reasons set forth in this Opinion, we vacate the judgment of sentence and remand this matter for entry of an order of abatement upon record certification of appellant's death. Jurisdiction relinquished.[6]

CAVANAUGH, J., files a concurring opinion.

CAVANAUGH, Judge, concurring:

I agree with the majority's disposition that on the basis of the recent Supreme Court holding in *Commonwealth v. Seese*, 512 Pa. 439, 517 A.2d 920 (1986), the testimony of Dr. Fagenholz was improperly admitted. For this reason, the judgment of sentence should be reversed.

I further agree that the conduct of a new trial is an impossibility and that entry of an order of abatement is proper upon record certification as to appellant's death.

I would not reach the issue of the propriety of the denial of appellant's request for videotaped testimony of the minor victim. This issue only becomes relevent in the event a new trial were a remedy. Since a new trial is not possible under the circumstances, I take no position on this issue.

**4.** The remaining thirty-two jurisdictions which permit the videotaping of a child's deposition prior to trial for use at trial are: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Indiana, Iowa, Kansas, Kentucky, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Mexico, Ohio, Oklahoma, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Wisconsin and Wyoming. *Id.*, at 11, col. 2. Source: *See* n. 3, *supra*.

**5.** This statute also permits videotaping of the child's testimony for use at the preliminary hearing.

**6.** In light of our disposition, above, we find it unnecessary to address appellant's remaining contentions.