THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILL ROBINSON *et al.*, Defendants-Appellants.

First District (6th Division)   Nos. 1—96—1695, 1—96—2053, 1—96—3757, 1—97—3054, 1—97—3728 cons.

Opinion filed August 7, 1998.

QUINN, J., specially concurring.

GREIMAN, J., specially concurring in part and dissenting in part.

Rita A. Fry, Public Defender, of Chicago (Lester Finkle and Emily Eisner, Assistant Public Defenders, and Ronald S. Packowitz, of counsel), for appellants.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Judy L. Deangelis, and Mary L. Boland, Assistant State's Attorneys, of counsel), for the People.

JUSTICE ZWICK delivered the opinion of the court:

These five criminal cases share a common procedural element. In all, the defendants died during the pendency of their appeals. Subsequently, counsel who had represented the defendants brought independent motions seeking to dismiss the appeals and to vacate the convictions, arguing that the cases had become moot upon their clients' deaths. The State agreed that the appeals were moot and that the appellate proceedings should be dismissed, but disagreed as to what effect dismissal would have upon the underlying convictions. Whereas defense counsel argued that the convictions should be voided as if they had never occurred (*ab initio*, or literally, "from the beginning"), the State took the position that the defendants' convictions should be allowed to stand as a matter of record. We consolidated the cases and ordered the issue briefed and argued. We also ordered supplemental briefing following oral argument to address the impact of our state constitution's 1992 "victim's rights" amendment. See Ill. Const. 1970, art. I, § 8.1. The effect of this amendment presents an issue of first impression.

## FACTS

The underlying facts of the defendants' convictions can be briefly stated.

Defendant Will Robinson, in appeal number 1—96—1695, was convicted of burglary. Officers testified that they observed Robinson in the act of removing a cellular telephone from the rear seat of a parked vehicle. Robinson was sentenced to serve 20 years in the custody of the Illinois Department of Corrections. He subsequently died in custody on April 16, 1997, while his appeal was pending.

Defendant John Dunn, in appeal number 1—96—2053, was convicted of voluntary manslaughter for killing his wife, Patricia "Penny" Dunn, by shooting her in the mouth. Penny did not die immediately but was rendered a quadriplegic and suffered during the next eight years from her injury. Following his conviction, Dunn was sentenced to an extended term in prison of 24 years. He died at the Dixon Correctional Center of lung and throat cancer, on October 9, 1996, while his appeal was pending.

Defendant Raymond Golden, in appeal number 1—97—3728, was arrested for possession of less than 15 grams of a substance containing cocaine. The arrest occurred after the vehicle he was driving was stopped on suspicion that it had been stolen. A pat-down search of Golden at the scene resulted in the officers discovering the cocaine. After his conviction, Golden was sentenced to three years' imprisonment in the Illinois Department of Corrections. He died on March 29, 1998, during the pendency of his appeal.

Defendant Amanda Wallace, in appeal number 1—96—3757, was convicted of the first-degree murder of her three-year-old son, Joseph. Evidence presented at trial established that Wallace wrapped an electrical cord around his neck and then hung him from a door transom. Wallace was sentenced to natural life imprisonment for her crime. Counsel subsequently informed this court that Wallace committed suicide on August 3, 1997, during the pendency of her appeal.

Defendant Glennon Dye, in case number 1—97—3054, was convicted of aggravated criminal sexual assault, criminal sexual assault and aggravated criminal sexual abuse against his six-year-old niece. He was sentenced to 30 years' imprisonment for his crimes. Dye appealed his conviction and subsequently committed suicide on October 1, 1997, prior to his appeal being resolved.

## ANALYSIS

■ When a criminal defendant dies and thereby renders a pending appeal moot, appellate courts are faced with three possible alternatives: (1) the appeal can be dismissed, leaving the conviction to stand unabated; (2) the proceedings can be abated *ab initio*, thereby removing forever any stigma of the conviction; or (3) a third party can be substituted for the defendant and the case may proceed. Defense counsel argue that these cases should be abated *ab initio*. They note that this was the approach taken by our supreme court in *People v. Mazzone*, 74 Ill. 2d 44, 383 N.E.2d 947 (1978). They also note that dismissing the appeal and vacating the proceedings *ab initio* is, by far, the rule followed in most federal and other state courts. See generally Annotation, *Abatement of State Criminal Case by Accused's Death Pending Appeal of Conviction—Modern Cases*, 80 A.L.R.4th 189 (1990) (discussing cases since 1950) and Annotation, *Abatement Effects Of Accused's Death Before Appellate Review of Federal Criminal Conviction*, 80 A.L.R. Fed. 446 (1986).

In *Mazzone*, the defendant was found guilty of publicly exhibiting an obscene film and assessed a fine of $500. He died after leave to appeal had been granted but before the State had filed its brief. Noting some controversy in the United States Supreme Court on the question of what should occur when a defendant whose appeal has not yet been resolved dies (*Mazzone*, 74 Ill. 2d at 47, 48, citing *Durham v. United States*, 401 U.S. 481, 28 L. Ed. 2d 200, 91 S. Ct. 858 (1971); *Dove v. United States*, 423 U.S. 325, 46 L. Ed. 2d 531, 96 S. Ct. 579 (1976)), our supreme court held that, because Mazzone's petition for leave to appeal had been granted and his right to challenge his conviction had

formally vested, the proceedings must abate *ab initio*.[1] The court emphasized that this was the procedure followed in "the great majority of courts." *Mazzone*, 74 Ill. 2d at 47.

In its arguments to this court, the State has strenuously maintained the view that a criminal defendant's constitutional right to pursue an appeal should be considered a personal right which expires upon the defendant's death. According to the State, a defendant's conviction should stand because the "presumption of innocence has been erased by his conviction" and because "the ultimate disposition of defendant's prosecution should be determined by the status quo at the time of his death." The State urges that we distinguish *Mazzone* from those cases now before us because the defendant in *Mazzone* faced only a fine and not a prison sentence.

We reject the State's narrow interpretation of *Mazzone*. We note that the cases cited in *Mazzone* fail to draw the distinction now advanced by the State. See *Mazzone*, 74 Ill. 2d at 47, citing *State v. Stotter*, 67 Idaho 210, 175 P.2d 402 (1946) (defendant sentenced to 30 days in jail and $300 criminal fine—conviction abated in its entirety); *State v. Bradley*, 229 Iowa 92, 293 N.W.858 (1940) (defendant sentenced to both prison term and payment of a fine—conviction abated); *State v. Blake*, 53 Ohio App. 2d 101, 371 N.E.2d 843 (1977) (rejecting argument that fine should not be abated); *State v. Clark*, 260 N.W.2d 370, 371 (S.D. 1977) ("inclusion of a fine does not operate to alter the rule of abatement of all proceedings"); *Crooker v. United States*, 325 F.2d 318 (8th Cir. 1963) (fine and prison sentence—conviction abated in its entirety); *United States v. Knetzer*, 117 F. Supp. 917, 918 (S.D. Ill. 1954) ("fine is a part and parcel of the judgment or punishment, and also abated upon the death of the defendant"). It follows that the supreme court did not intend the rule of abatement *ab initio* to apply only to those cases involving criminal fines. We agree with the State, however, that developments in Illinois law since *Mazzone* was decided prevent us from adopting the sweeping view of that case now advanced by defendants' counsel.

The cases that have abated proceedings *ab initio* and nullified the

---

[1]We note that, in rendering its decision in *Mazzone*, the supreme court reversed, *sub silencio*, the appellate court's then-recent decision in *People v. Crosby*, 61 Ill. App. 3d 115, 377 N.E.2d 1118 (1978). In *Crosby*, the appellate court determined that, when a criminal defendant dies, his appeal should be dismissed but that the conviction should be left intact because the conviction represents a judgment of the trial court which "stands until it is reversed." *Crosby*, 61 Ill. App. 3d at 116.

defendant's conviction after his or her death, including *Mazzone*, emanate from the view that criminal prosecutions should punish the guilty and protect society from any future criminal misdeeds of the defendant. Once the defendant has died, these objectives are no longer possible. This traditional view began to change nationally, however, in the late 1970s and early 1980s with the recognition that crime victims and witnesses also have important, personal interests at stake in criminal proceedings. See C. Gaumer, *Protecting the Innocent: Victim-Witness Rights in Illinois*, 83 Ill. B.J. 568 (1995).

■ To protect the interests of crime victims and witnesses, our General Assembly passed the Rights of Crime Victims and Witnesses Act (the Act) (725 ILCS 120/1 *et seq.* (West 1996)) in 1984. The Act recognizes that certain "crime victims" (see 725 ILCS 120/3(a) (West 1996)), specifically those persons and their families who have been harmed by "violent crime" (see 725 ILCS 120/3(c) (West 1996)), have legally recognized rights in criminal proceedings which are distinct from the interests of either the defendant or the state. "Violent crime" is defined by the Act to be:

"any felony in which force or threat of force was used against the victim, or any offense involving sexual exploitation, sexual conduct or sexual penetration, domestic battery, violation of an order of protection, stalking, or any misdemeanor which results in death or great bodily harm to the victim or any violation of Section 9—3 of the Criminal Code of 1961 [involuntary manslaughter and reckless homicide], or Section 11—501 of the Illinois Vehicle Code [driving while under the influence], or a similar provision of a local ordinance, if the violation resulted in personal injury or death, and includes any action committed by a juvenile that would be a violent crime if committed by an adult." 725 ILCS 120/3(c) (West 1996).

The Act guarantees 10 specific rights to those who have been victimized by violent crime:

(1) The right to be treated with fairness and respect for their dignity and privacy throughout the criminal justice process;

(2) The right to notification of court proceedings;

(3) The right to communicate with the prosecution;

(4) The right to make a statement to the court at sentencing;

(5) The right to information about the conviction, sentence, imprisonment, and release of the accused;

(6) The right to timely disposition of the case following the arrest of the accused;

(7) The right to be reasonably protected from the accused throughout the criminal justice process;

(8) The right to be present at the trial and all other court proceedings on the same basis as the accused, unless the victim is to testify

and the court determines that the victim's testimony would be materially affected if the victim hears other testimony at the trial;

(9) The right to have present at all court proceedings, subject to the rules of evidence, an advocate or other support person of the victim's choice; and

(10) The right to restitution.

See 725 ILCS 120/4 (West 1996).

Subsequently, in 1992, the statutory rights afforded to the victims of violent crime were elevated to a place within our state constitution by amendment to our state's Bill of Rights. Ill. Const. 1970, art. I, § 8.1.

We note that, in *Mazzone*, the defendant had been convicted of publicly displaying obscene material, a criminal offense that does not involve a violent crime or implicate the interests of individual crime victims. The State, therefore, even today, after passage of the Act and constitutional amendment, would have no legally recognizable interest in upholding Mazzone's conviction once he had died. This is in stark contrast, however, to the appeals of defendants Dunn, Wallace and Dye. These defendants were convicted of manslaughter, murder and sexual assault, respectively. In these cases, individual victims suffered horrible physical and psychological injury, and their families endured almost unspeakable emotional anguish. Both the Act and our constitution now formally recognize that the families of these victims (as well as Glennon Dye's surviving victim) continue to suffer, long after the horror of the criminal attack.

Defendants' attorneys object to applying the victim's rights amendment or the provisions of the Act to this case, noting that both provide that victim's rights are not to be used as a ground for relief on appeal. See Ill. Const. 1970, art. I, § 8.1(d); 725 ILCS 120/9 (West 1996). In this case, however, the State does not seek appellate *relief* at all. Instead, the State simply maintains that there are recently recognized public policy interests in preserving the lower court's judgments and that these interests must include consideration of the victims' rights to fairness and dignity before the defendants' convictions may be vacated as a matter of routine procedure. The record certainly supports such an argument.

We are particularly struck by the victim impact statements contained in defendant Dunn's case. Thomas Cygan, the brother of manslaughter victim Penny Dunn, wrote to the trial court on behalf of his family following Dunn's conviction. He asked that the court impose an appropriate sentence so as to "[h]elp renew our faith in the judicial system, and help us cope with our loss." Alice Cygan, Penny Dunn's mother, recounted how her own health had deteriorated during her

daughter's long decline and expressed similar sentiments regarding the conviction and sentencing: "I just hope that Jack is punished for what he did to Penny ***. It will make me feel much better and maybe I can get my health back." Jo Anne Hutton, Penny Dunn's sister, also expressed hope that John Dunn's conviction would provide some relief for her family's suffering. She wrote:

"I've tried to put my feelings down on paper, but it is just too hard. Just as with sitting through the trial for those three days, the memories, happy but mostly sad, whirl through my mind.

What Penny, my family and I have gone through is pure torture in various ways. Please help us to end this nightmare by giving Penny the justice she deserves. Only then can we close this chapter and get on with life remembering Penny the way she would want."

Clearly, a judicial order vacating the conviction and sentence of John Dunn, a defendant who is no longer able to appreciate the benefits of such a ruling, would have a senselessly harsh impact upon the psychological well being of Penny Dunn's surviving family. It would further have the effect of eroding confidence in the criminal justice system among those victims and witnesses who participated in the trial by subjecting the trial result and circuit court judgment to the arbitrary timing of Dunn's death. In the cases of Wallace and Dye, where the defendants deliberately took their own lives, abatement *ab initio* is likely to cause even more consternation among the trial participants.

In the face of such arguments, defendants' counsel can point only to the fact that a majority of courts continue to regularly abate proceedings *ab initio*. Research reveals that, of the states that have addressed the issue, abatement *ab initio* continues to be the preferred disposition. Twenty-two states, including Illinois, as well as the District of Columbia, currently set aside the conviction as a matter of course.[2] Only 14 states dismiss the appeal, leaving

---

[2]Jurisdictions besides Illinois that abate a deceased defendant's appeal *ab initio* are: Alaska (*Hartwell v. State*, 423 P.2d 282 (Alaska 1967)); Arizona (*State v. Griffin*, 121 Ariz. 540, 592 P.2d 374 (App. 1978)); California (*People v. Keister*, 46 Cal. App. 4th 1318, 54 Cal. Rptr. 2d 431 (1996)); Colorado (*People v. Valdez*, 911 P.2d 703 (Colo. App. 1996)); District of Columbia (*Howell v. United States*, 455 A.2d 1371 (D.C. 1983)); Idaho (*State v. Stotter*, 67 Idaho 210, 175 P.2d 402 (1946)); Iowa (*State v. Holbrook*, 261 N.W.2d 480 (Iowa 1978)); Louisiana (*State v. Beasley*, 438 So. 2d 1229 (La. App. 1983)); Maine (*State v. Carter*, 299 A.2d 891 (Me. 1973)); Maryland (*Jones v. State*, 302 Md. 153, 486 A.2d 184 (1985) (limited to cases where statutory right to appeal is pending or has not been exercised)); Massachusetts (*Commonwealth v. De La*

the conviction to stand.[3] Eight states allow the appeal to continue by substitution for the defendant, but usually pursuant to court rule.[4] It is clear from our review of the most recent cases, however, that the trend has been away from abating a deceased defendant's conviction *ab initio.* See, *e.g., State v. Hoxsie,* 570 N.W.2d 379 (S.D. 1997); *State v. Salazar,* 123 N.M. 778, 945 P.2d 996 (1997); *State v. Clements,* 668 So. 2d 980 (Fla. 1996); *People v. Peters,* 449 Mich.

---

*Zerda,* 416 Mass. 247, 619 N.E.2d 617 (1993) (retained in discretionary appeal)); Missouri (*State v. West,* 630 S.W.2d 271 (Mo. App. 1982)); Nebraska (*State v. Campbell,* 187 Neb. 719, 193 N.W.2d 571 (1972)); New York (*People v. Craig,* 78 N.Y.2d 616, 585 N.E.2d 783, 578 N.Y.S.2d 471 (1991)); North Carolina (*State v. Dixon,* 265 N.C. 561, 144 S.E.2d 622 (1965)); Oklahoma (*Johnson v. State,* 392 P.2d 767 (Okla. Crim. App. 1964)); Rhode Island (*State v. Marzilli,* 111 R.I. 392, 303 A.2d 367 (1973)); South Dakota (*State v. Hoxsie,* 570 N.W.2d 379 (S.D. 1997)); Tennessee (*Carver v. State,* 217 Tenn. 482, 398 S.W.2d 719 (1966)); Utah (*State v. Christensen,* 866 P.2d 533 (Utah 1993) (but continues if restitution)); and Wyoming (*State v. Free,* 37 Wyo. 188, 260 P. 173 (1927)).

[3]Jurisdictions that retain the conviction are: Alabama (*Ulmer v. State,* 39 Ala. App. 519, 104 So. 2d 766 (1958) (court ruled "appeal abated" without saying more)); Connecticut (*State v. Trantolo,* 209 Conn. 169, 549 A.2d 1074 (1988) (appeal dismissed as moot since fine uncollectible)); Delaware (*Perry v. State,* 575 A.2d 1154 (Del. 1990)); Florida (*State v. Clements,* 668 So. 2d 980 (Fla. 1996)); Georgia (*Harris v. State,* 229 Ga. 691, 194 S.E.2d 76 (1972)); Indiana (*Whitehouse v. State,* 266 Ind. 527, 364 N.E.2d 1015 (1977)); Kentucky (*Royce v. Commonwealth,* 577 S.W.2d 615 (Ky. 1979)); Michigan (*People v. Peters,* 449 Mich. 515, 537 N.W.2d 160 (1995)); Minnesota (*In re Carlton,* 285 Minn. 510, 171 N.W.2d 727 (1969)); Montana (*State v. Cripps,* 177 Mont. 410, 582 P.2d 312 (1978)); New Hampshire (*State v. Poulos,* 97 N.H. 352, 88 A.2d 860 (1952) (court ruled "appeal abated" without saying more)); North Dakota (*State v. Dalman,* 520 N.W.2d 860 (N.D. 1994) (post-conviction appeal)); Oregon (*State v. Kaiser,* 297 Or. 399, 683 P.2d 1004 (1984)); and South Carolina (*State v. Anderson,* 281 S.C. 198, 314 S.E.2d 597 (1984)). See also *Polhemus v. State,* 659 S.W.2d 433 (Tex. Crim. App. 1983).

[4]States that permit the appeal to continue subsequent to the defendant's death are: Hawaii (*State v. Makaila,* 79 Haw. 40, 897 P.2d 967 (1995)); Kansas (*State v. Jones,* 220 Kan. 136, 551 P.2d 801 (1976)); Mississippi (*Gollott v. State,* 646 So. 2d 1297 (Miss. 1994) (defaults to abatement status if no motion to substitute filed)); New Jersey (*City of Newark v. Pulverman,* 12 N.J. 105, 95 A.2d 889 (1953)); New Mexico (*State v. Salazar,* 123 N.M. 778, 945 P.2d 996 (1997)); Ohio (*State v. McGettrick,* 31 Ohio St. 3d 138, 509 N.E.2d 378 (1987)); Pennsylvania (*Commonwealth v. Bizarro,* 370 Pa. Super. 21, 535 A.2d 1130 (1987)); and Wisconsin (*State v. McDonald,* 144 Wis. 2d 531, 424 N.W.2d 411 (1988)).

515, 537 N.W.2d 160 (1995); *State v. Makaila*, 79 Haw. 40, 897 P.2d 967 (1995) (allowing substitution on behalf of deceased defendant pursuant to rules of procedure); *Perry v. Delaware*, 575 A.2d 1154 (Del. 1990). We expect this trend will continue as the courts and public begin to appreciate the callous impact such a procedure necessarily has on the surviving victims of violent crime. We note that at least one state legislature has acted to change the abatement rule in order to reverse what was perceived by many in that state to be an affront to victims' rights. "An Act Preventing A Court from Vacating Certain Convictions Based on the Death of a Defendant," Mass. S.B. 1698, 181st Gen. Ct., 1997 Reg. Sess. (February 27, 1997); J. Ellemen, *Salvi's Record Wiped Clean, Posthumously; Charges Voided on Technicality*, Boston Globe, February 1, 1997, at A1 (referring to abatement *ab initio* rule as being "the ultimate legal technicality" and quoting a murder victim's daughter as saying she was "outraged" by its application).

■ After carefully considering the arguments presented, we conclude that the passage of the Act and the existence of the victim's rights amendment to our state's Bill of Rights require that the courts give formal consideration to the interests of the victims of violent crimes, weighing the memory of the deceased victims and the well being of their innocent survivors in considering whether a conviction should be abated *ab initio*. When such a balancing of rights is considered in the context of "violent crime," respect for the dignity of those who have been victimized precludes abatement of convictions such as those of defendants Dunn, Wallace and Dye. Abating the proceedings *ab initio*, after trial, conviction and judgment, creates an unacceptable and ultimately painful legal fiction for the surviving victims that implies that the defendants have somehow been exonerated. We will not exacerbate the loss suffered by the victims of these crimes and add to their tragedy by entering a judgment that appears to absolve the defendants of their violent criminal acts.

Speaking directly, to wipe out the convictions of defendants John Dunn, Amanda Wallace and Glennon Dye on the legal technicality suggested by defense counsel would serve only to increase the misery of victims who have endured enough suffering. In our view, the law should serve as a salve to help heal those whose rights and dignity have been violated, not as a source of additional emotional turmoil. To this end, we hold that the victims of violent crime are entitled to retain whatever closure that may have been brought about by the finality of a criminal conviction.

In accord with the above, we dismiss the appeals but decline to void the convictions in case numbers 1—96—2053 (Dunn, voluntary

manslaughter), 1—96—3757 (Wallace, murder) and 1—97—3054 (Dye, aggravated criminal sexual assault).

We turn to the remaining appeals, which do not involve "violent crimes." Although the State makes a strong argument in opposition to the rule of abatement *ab initio*, we do not believe ourselves at liberty, as an intermediate court of review, to revisit an issue on which our supreme court has spoken directly and authoritatively. The rights of violent crime victims are not obviously implicated by the convictions of defendants Robinson and Golden, and we conclude that the doctrine of *stare decisis* requires the general rule of abatement *ab initio* be followed in such cases until our supreme court directs otherwise. The State's arguments advocating a different rule are necessarily the same arguments implicitly considered and rejected by that court in deciding *Mazzone*. Accordingly, we vacate the proceedings *ab initio* in appeals numbered 1—96—1695 (Robinson, burglary), and 1—97—3728 (Golden, possession).

In sum, the proceedings considered in this opinion abate *ab initio* as to defendants Robinson and Golden; the appeals with regard to defendants Dunn, Wallace and Dye are dismissed as moot. The convictions in these three cases stand unabated.

Appeal Nos. 1—96—2053, 1—96—3757 and 1—97—3054, Dismissed as moot.

Appeal Nos. 1—96—1695 and 1—97—3728, Vacated *ab initio*.

JUSTICE QUINN, specially concurring:

I concur in the holding that the Robinson and Golden convictions should be voided *ab initio*. I also concur in the holding that the Rights of Crime Victims and Witnesses Act (725 ILCS 120/1 *et seq.* (West 1996)) and article I, section 8.1, of the state constitution (Ill. Const. 1970, art. I, § 8) preclude the abatement *ab initio* of defendants Dunn, Wallace and Dye's convictions.

The dissent relies on *People v. Mazzone*, 75 Ill. 2d 44 (1978), for its position that all of the convictions at issue before this court should be voided *ab initio*. In the only reported case citing *Mazzone* on the issue of the effect of the death of a defendant while his case was on appeal, *People v. Hovanec*, 76 Ill. App. 3d 401 (1979), the appeal was merely dismissed. The defendant's conviction was not vacated *ab initio*.

In the only other reported case involving the death of a defendant while his case was on appeal (by the State), *People v. Milner*, 101 Ill. 2d 573, 469 N.E.2d 1067 (1984), our supreme court dismissed the State's petition for leave to appeal the appellate court's reversal of the defendant's murder conviction. The supreme court did not vacate the

defendant's convictions of involuntary manslaughter and concealment of a homicidal death.

The dissent asserts that due to our application of the Act and the constitutional amendment "strange results occur." The examples given in the dissent, the voiding *ab initio* of a defendant's convictions of multiple burglaries but denying this relief to a defendant convicted of driving under the influence when another person was injured in the auto accident are completely legally consistent. It is the violence to the victim that triggers the application of the Act and the constitutional amendment.

When a defendant has died during the pendency of his appeal and his conviction is voided *ab initio*, the defendant "stands as if he never had been indicted or convicted." *United States v. Schumann*, 861 F.2d 1234, 1237 (11th Cir. 1988). Title 18 U.S.C. § 3663(a)(1) states that, before the court can impose a restitution order, a defendant must first be convicted of a crime. Thus, restitution orders do not survive defendants who have died during the pendency of their appeal in the United States Court of Appeals. *United States v. Logal*, 106 F.3d 1547, 1552 (11th Cir. 1997).

Section 5—5—6 of the Unified Code of Corrections similarly requires that before a court can impose a restitution order, the defendant must first be convicted of a crime. 730 ILCS 5/5—5—6 (West 1996). If, as suggested by the dissent, all defendants' convictions were to be voided *ab initio*, this would necessarily result in the voiding of restitution orders. This result conflicts with both the Act and the constitutional amendment. This is one more reason that the convictions of defendants who die while their appeal is pending must not be voided *ab initio*.

Further, defendants Wallace and Dye both committed suicide before their appeals were decided. The rationale for voiding a defendant's conviction *ab initio* is that "death has deprived the accused of his right to appeal." *United States v. Moehlenkamp*, 557 F.2d 126, 128 (7th Cir. 1977). In Wallace and Dye's cases, the accused deprived themselves of that right by their own hand. As pointed out by Justice Cahill in his dissent in *Logal*, this situation is more analogous to the scenario in which the appellant in a criminal case becomes a fugitive; in such a case, his appeal is lost. Waiver is defined as the intentional relinquishment of a known right. When convicted defendants intentionally take their own lives they have waived their right to appeal as well as their right to life. They should not be rewarded by vacating their convictions.

Finally, I believe that if our supreme court or the state legislature does consider this issue, any relief granted to deceased defendants

should be limited to those whose convictions were on appeal as a matter of right.

JUSTICE GREIMAN, specially concurring in part and dissenting in part:

The bell has tolled for this John Dunn and death has become the final judgment for all of these defendants.

Generally, courts have taken the position that the aim of the criminal justice system is the protection of the public and the punishment of the guilty. Upon the death of a defendant, those goals are unnecessary on the one hand and impossible on the other.

The majority acknowledges that the Illinois Supreme Court has spoken on this issue in a direct and unequivocal manner in *People v. Mazzone*, 74 Ill. 2d 44 (1978). The *Mazzone* court recognized that "the death of a defendant pending an appeal *** abates not only the appeal but all proceedings, *ab initio*." *Mazzone*, 74 Ill. 2d at 47. The *Mazzone* court could have easily taken a different tack, since it was faced with only a fine levied as a result of the criminal conviction and while the defendant could not have served any time, his estate could have been held liable for the payment of the fine.

We are an intermediate court of review and are not afforded the luxury to ignore the holdings of our highest court or, in the case of the majority, distinguish its holdings out of existence. In fact, this court has previously dismissed two appeals relating to Will Robinson, the same defendant in the instant case, by allowing defense counsel's motions to abate proceedings as void *ab initio*. On May 12, 1997, the first division of this court issued an order on the appeal of defendant Robinson in case No. 1—95—3922 and its order stated "Counsel's Motion to Abate Proceedings *ab initio* due to Appellant's death is granted." In turn, on May 14, 1997, the third division of this court issued an order on the appeal of defendant Robinson in case No. 1—96—3016 and its order stated "the defendant's motion to abate proceedings as void *ab initio* is allowed."

The majority also acknowledges that the great majority of jurisdictions abate the proceedings *ab initio*.

To distinguish *Mazzone*, the majority attempts to employ the Rights of Crime Victims and Witnesses Act (Act) (725 ILCS 120/1 *et seq*. (West 1996)) and the amendment to the Illinois Constitution which raises the Act to constitutional dignity (Ill. Const. 1970, art. I, § 8.1). None of the 10 specific "rights" provided in the Act and the amendment come even close to overturning *Mazzone*. The majority equates death and abatement with "fairness and respect for their dignity" and suggests that it is an affront to the victims' dignity for

convictions to be "vacated as a matter of routine procedure." Can the death of a defendant be cast as a "routine procedure"?

Moreover, where the Act and the constitutional amendment are used as the basis for the majority opinion, strange results occur! For example, where a defendant, while driving under the influence of alcohol (DUI), has injured another in an auto accident, his conviction for DUI would not be vacated *ab initio*, although a defendant convicted of multiple burglaries would be entitled to have his convictions vacated in the event of his death.

Finally, the majority chooses to ignore the legislative debate on the resolution authorizing the constitutional amendment. During the Senate debate on the resolution, the principal sponsor of the resolution stated: "I believe that the individual's entire appeal rights are not addressed in here, or the time frame of doing so is not addressed in here, in terms of rushing it or eliminating any of the rights of appeals of the accused—or in this case, a convicted person." 87th Ill. Gen. Assem., Senate Proceedings, April 30, 1992, at 16 (statements of Senator Leverenz).

The Act provides that "[n]othing in this Act shall create a basis for vacating a conviction or a ground for appellate relief in any criminal case." 725 ILCS 120/9 (West 1996). Employing logic which is pure casuistry, the majority ignores the implications of this statement by suggesting that since the State is not seeking any "relief," the prohibition set out in the Act does not apply. This reasoning is certainly disingenuous considering that the language of the Act is the only thing that the majority uses to distinguish *Mazzone*.

As men and women, we must have great compassion for victims of crime and their loved ones. As judges, however, we must also be mindful of the precedents of higher courts and the rights of the accused. Additionally, the rights of third parties may have intervened. For example, the heirs or legatees of a person who dies after being convicted of murdering a testator or ancestor would lose rights after a conviction without the right of appeal. Some states have made provision for such an occurrence by allowing the appeal to at least continue; however, in light of *Mazzone*, that is for the legislature to develop a plan for such a change in our laws. The legislature would also have to consider the rights of a surviving spouse to his or her convicted spouse's public pension where the conviction was predicated upon the commission of a crime relating to the deceased's public employment. Moreover, the family of the deceased may have legitimate concerns about the reputation of the deceased.

With respect to the concurring opinion, the two Illinois cases cited do not provide any analysis that would impair the validity of *Mazzone*.

The *Hovanec* case makes a passing reference to the dismissal of a co-defendant and specifically cites *Mazzone* as the authority for the dismissal of the appeal but does not mention whether or not, in dismissing the appeal, the conviction was abated. As to *Milner*, the concurring opinion correctly discloses that this was an appeal by the State rather than the defendant so that no impairment of *Mazzone* is reflected in this dismissal of appeal or in allowing the appellate court decision to stand. The notion of whether the act of suicide changes the effect of *Mazzone* because it is a "waiver" or an escape is too metaphysical to address in this dissent.

I agree, however, with the concurring opinion that the abatement *ab initio* should apply only to those defendants whose convictions were on appeal as a matter of right. I do this in recognition of the fact that efforts at appeals can be as endless or as limited as conceived by legal practitioners or prison librarians. See *People v. Heirens*, 271 Ill. App. 3d 392, 396-99 (1995) (a three-page list of postconviction proceedings and appeals).

We should not invade the provence of the highest court of our state or the legislative branch of government and should vacate the conviction *ab initio*. Accordingly, I concur with the Robinson and Golden dispositions and dissent from the Dunn, Wallace and Dye dispositions.