646 So.2d 1297 (1994)
Francis Ray GOLLOTT
v.
STATE of Mississippi.
No. 91-KA-00511.
Supreme Court of Mississippi.
December 1, 1994.
*1299 Gail D. Nicholson and Chester D. Nicholson, Nicholson & Nicholson, Gulfport, for appellant.
Michael C. Moore, Atty. Gen., Kenneth C. O'Neal, and Jolene M. Lowry, Sp. Asst. Attys. Gen., Jackson, for appellee.
En Banc.
SULLIVAN, Justice, for the Court:
Francis Ray Gollott (Gollott) was first brought to trial on February 28, 1990, and prosecuted for the murder of his wife, Billie Diane Gollott, in the Circuit Court of Hancock County, Mississippi  venue had been changed from the Second Judicial District of Harrison County because of pretrial publicity. The first trial resulted in a hung jury. Gollott's second trial commenced in February 1991 and resulted in a conviction of manslaughter. He was sentenced to fifteen (15) years incarceration, with three (3) years suspended, in the custody of the Mississippi Department of Corrections.
Gollott perfected his appeal to this Court and briefing by the parties was concluded on June 15, 1992. A civil suit for wrongful death, Stacy Pitalo, Individually and as Administratrix of the Estate of Billie Dianne Gollott, Tracy Pratt and Marla Dawn Gollott vs. Francis Ray Gollott, Cause Number 2924, was filed against him by his three adopted daughters. The wrongful death suit was held in abeyance pending the resolution of his appeal of the manslaughter conviction.
Gollott died of a heart attack on November 16, 1993. On November 29, 1993, his counsel filed a Motion for a Decision on the Merits, claiming that Gollott's death does not render his appeal moot because his estate would be severely prejudiced in its defense of the wrongful death suit if the manslaughter conviction is allowed to stand without full adjudication on the merits. The State filed a Suggestion of Death and Motion to Dismiss Appeal on December 6, 1993, arguing that the appeal is moot, citing Haines v. State, 428 So.2d 590 (Miss. 1983), and Berryhill v. State, 492 So.2d 288 (Miss. 1986).
The parties were then required to file briefs in support of their motions for consideration by this Court. There is one issue for our consideration:

Whether the vested right to a direct appeal terminates, leaving the conviction intact, upon the death of a defendant pending appeal?
We have thus far held that when a defendant dies pending his criminal appeal, the appeal is dismissed as moot and the conviction remains intact. Haines and Berryhill, supra. We reasoned that upon conviction, the defendant is no longer presumed innocent, and therefore, abatement ab initio (the view that the entire criminal proceeding is void from its inception; judgment is vacated and remanded with instructions to dismiss the indictment), which is the majority rule in the federal and state courts, is not an acceptable approach. Furthermore, the comment to Supreme Court Rule 43(a), Substitution of Parties, citing Berryhill, 492 So.2d 288 (Miss. 1986), states that the rule only allows for substitution upon the death of a party in civil actions, not criminal cases.
In both Haines and Berryhill this Court was asked by the representative of the defendant to follow the majority rule, abatement ab initio. We declined to adopt that approach, and in Haines, 428 So.2d at 592 f.n. 1, stated:

*1300 Suppose a so-called "mad dog killer" was convicted of capital murder and sentenced to death for an atrocious, heinous and especially cruel crime. His conviction was appealed here as required by law, but before decision by this Court he died. Under the majority rule, the judgment of conviction and indictment would be vacated and dismissed  an obvious miscarriage of justice.
We are no longer of the opinion that the abatement ab initio rule obviously results in a "miscarriage of justice." There are essentially three reasons for penal statutes in our justice system: (1) to protect society from dangerous individuals; (2) to hopefully rehabilitate convicted criminals; and, (3) to deter others from violating the law. Following the abatement ab initio rule does not undermine any of these purposes. What is obvious is that society needs no protection from the deceased, nor can the deceased be rehabilitated. Moreover, other potential criminals will be no less deterred from committing crimes. In the abatement ab initio scheme, the judgment is vacated and the indictment is dismissed, but only because the convicted defendant died. Surely this would not give peace of mind to the criminally inclined.
This is not to say that the abatement ab initio rule is without its problems. Possibly, the "miscarriage of justice" referred to in the Haines opinion lies in the idea that a conviction of the "mad dog killer" benefits society as an inherently good thing, even when the conviction has been appealed but not heard, coupled with the belief that the deceased "mad dog killer" absolutely does not deserve to have his name cleared.
To be sure, a man guilty of such heinous crimes does not deserve to have his name cleared; however, in this hypothetical situation, the "mad dog killer" does not have his "good name" restored when the majority approach is followed. Abatement ab initio is not the same as being found innocent by a jury. Rather, the conviction is simply vacated because the defendant appealed as of right, and until the appellate Court has heard that appeal, the matter has not been fully adjudicated.
Gollott's counsel makes a valid point when she states that if the abatement ab initio rule is perceived to be unjust, it is equally unjust to allow a conviction to stand and be used against the deceased's estate for various collateral matters as if the appeal had been heard and the conviction affirmed. It is true that upon conviction of a criminal defendant, the presumption of innocence is replaced by a presumption that the conviction is valid which may only be rebutted by a finding of reversible error on appeal. Haines, 428 So.2d at 591; citing, Nicholson v. State, 254 So.2d 881, 884 (Miss. 1971). However, allowing the conviction to stand when the defendant has perfected his direct appeal to this Court, pursuant to Miss. Code Ann. § 99-35-101 (1972), as Amended, without fully adjudicating the appeal, is not merely a presumption that the conviction is valid, but has the same effect as if this Court were to pronounce that the appeal is meritless.
The United States Supreme Court has held that direct appeals of right and pending petitions for certiorari should be abated ab initio when the defendant dies pending appeal. Durham v. United States, 401 U.S. 481, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971). However, a more recent pronouncement from the United States Supreme Court drew a distinction between appeals of right and petitions for certiorari, overruling Durham to the extent that it applied to pending petitions for certiorari. The Court held that when the defendant has exhausted his right to appeal, but dies pending determination of a certiorari petition, the proceedings should be deemed moot at that point, and the conviction should remain intact. Dove v. United States, 423 U.S. 325, 96 S.Ct. 579, 46 L.Ed.2d 531 (1976).
The Fifth Circuit Court of Appeals noted that "the other Courts of Appeals have unanimously concluded that Dove applies only to petitions for certiorari, not appeals of right." United States v. Pauline, 625 F.2d 684, 685 (5th Cir.1980); citing, United States v. Bechtel, 547 F.2d 1379 (9th Cir.1977); United States v. Moehlenkamp, 557 F.2d 126 (7th Cir.1977); United States v. Littlefield, 594 F.2d 682 (8th Cir.1979).
*1301 Gollott's counsel states that this Court has never specifically addressed a request to proceed with an appeal after the defendant's death. She argues that a full review of the judgment is in the best interest of all parties and society. She furthermore states that Supreme Court Rule 43(a) could be construed to allow for substitution of the deceased in a criminal case, as that is not expressly prohibited by the rule. While it is true that we have never rendered an opinion specifically addressing a request of this nature, the Haines Court quoted Whitehouse v. State, 266 Ind. 527, 364 N.E.2d 1015, 1016 (Ind. 1977), and approved that court's expression of the minority view, wherein it was stated:
[I]f the judgment of the trial court were affirmed, it would, nevertheless be impossible of execution. If it were reversed, the defendant would not be available for trial. It follows that no state interest can be served by proceeding. At the same time, a reversal cannot benefit the defendant.
In none of the cases reviewed have survivor interests of third parties been suggested. Undoubtedly, in some cases, the standing conviction may be consequential to such interests. Such, however, could not have been a factor for consideration in the trial proceedings and could not have been a factor in the appeal, had it been concluded. The presumption of innocence falls with a guilty verdict. At that point in time, although preserving all of the rights of the defendant to an appellate review, for good and sufficient reasons we presume the judgment to be valid, until the contrary is shown. To wipe out such a judgment, for any reason other than a showing of error, would benefit neither party to the litigation and appears to us likely to produce undesirable results in the area of survivor's rights in more instances that (sic) it would avert an injustice. It, therefore, is our opinion that it would be unwise for us to reach out to adopt a policy favoring survivor interests of questionable validity. In arriving at this decision, we do not cut off any rights that survivors may now or hereafter have. Whether or not the bona fides of a conviction may yet be tested by survivors in cases where the appeals were aborted by death is a question best left for litigation confined within the parameters of the interests claimed.
428 So.2d at 591-92. By this Court's approval of the Indiana Supreme Court's language, it is evident that although we have never before rendered an opinion specifically addressing such a request, full review of the judgment after death of the defendant pending appeal has been considered by this Court, and disapproved of.
Defense counsel argues that without the review of this Court, the "doctrine of issue preclusion will hinder if not destroy defense of [the civil suit] if the jury verdict is allowed to stand." The state takes issue with the importance defense counsel places on the manslaughter conviction, arguing that the conviction may not act as an impediment to Gollott's defense of the civil suit.
In Jordan v. McKenna, 573 So.2d 1371 (Miss. 1990), this Court held that once the defendant was criminally convicted of assault and rape, the victim was entitled to have the fact of the defendant's fault taken as established in her civil action against him. The Court reasoned that if final findings of a criminal court collaterally estopped subsequent litigation of those same facts in another criminal proceeding, then there is no reason why the same principle should not apply when a criminal trial has determined facts beyond a reasonable doubt, and those same facts are in issue in a later civil case requiring proof by only a preponderance of the evidence. Id. at 1376.
Looking at the manslaughter statute, Miss. Code Ann. § 97-3-47 (1972), and the wrongful death statute, Miss. Code Ann. § 11-7-13 (Supp. 1993), it is apparent that a conviction of manslaughter will collaterally estop litigation of the same facts in the wrongful death suit. A manslaughter conviction will only lie where a jury finds beyond a reasonable doubt that the accused is guilty of culpable negligence (must be tantamount to a wanton disregard of, or utter indifference to, the safety of human life, so clearly evidenced as to place it beyond every reasonable doubt), which is beyond gross negligence in a civil context. Grinnell v. State, 230 So.2d *1302 555 (Miss. 1970). In a wrongful death action, the plaintiff must establish that the defendant is guilty of causing death of another "by any real, wrongful or negligent act or omission ..." § 11-7-13.
Therefore, defense counsel's concern is justified. Gollott's estate will be hindered in its defense of the wrongful death claim if the manslaughter conviction is allowed to stand. The state argues that since Gollott was convicted of manslaughter, and the Jordan v. McKenna case, supra, involved a rape conviction, the outcome for Gollott may be different. However, the cases cited by the state are from other jurisdictions and they are not directly on point. The state's authority is relevant to the question of whether an insurance company will still be held responsible to provide the insured with a defense and indemnification in a civil action after being convicted of manslaughter. That is a different question than whether a manslaughter conviction will result in issue preclusion on the merits of a separate civil claim.
Furthermore, in Smith v. Malouf, 597 So.2d 1299, 1301-02 (Miss. 1992), this Court held that pendency of an appeal does not alter the collateral estoppel or res judicata effect of an otherwise final judgment. Only after being reversed by this Court will the judgment lose its collateral estoppel or res judicata effect. See also M.R.C.P. 60(b). Therefore, if Gollott's death forever leaves his appeal unresolved, while simultaneously leaving his conviction intact, his estate and collateral interests of family members may be adversely affected.
Gollott's counsel also cites law from other jurisdictions in support of the policy considerations favoring full review of an appeal after the death of a criminal defendant. She cites a compelling passage from a Wisconsin Supreme Court case, State v. McDonald, 144 Wis.2d 531, 424 N.W.2d 411, 415 (1988), wherein Chief Justice Heffernan stated in his concurrence that
It may well be, as the dissent suggests, that the defendant in this case is in the hands of God. However, the responsibility for resolving the legal uncertainties left behind is squarely in the hands of this court. It is no answer to that responsibility to abdicate our judicial duty to another power. Indeed, it would be a violation of our oath to administer justice to do so.
We operate in a constitutional society, with a "wall of separation between church and state." In this case, that wall fences us on the side of the living and charges us with responsibility for determining whether legal error was made in the trial of Daniel P. McDonald. It is not his appeal which is moot, as the dissent would have it, but rather it is his death which is moot, because he did not take the potential errors of our justice system into the grave with him.
These potential errors remain behind to perplex and confound his relatives, friends, reputation, and the legal system. Indeed, an important point of the majority opinion is that these errors remain behind to worry society at large, because such important collateral matters as inheritance, insurance benefit distribution, and distribution of various property may wind up being conclusively determined without benefit of a review for error in the potentially controlling criminal action.
For these reasons, I suggest that the dissent suffers from a lack of focus. This court seeks not to extend its grasp "from here to eternity," but to discharge its duty in the here and now of civil society in order to unravel the potential legal problems caused by McDonald's death pending appeal.
We must note that the dissent in State v. McDonald makes valid points as well. The dissenting opinion focuses on the concept that a person's right to vindication or condemnation ends with his death.
The Supreme Court of Ohio found problems with the majority rule, abatement ab initio of all proceedings, and the minority rule presently followed in Mississippi  leaving the conviction intact while deeming the appeal moot. The Ohio Court reasoned that the former approach disregards the presumption that the decedent's conviction is valid, and the latter approach deprives the defendant of "fundamental rights, even though he be deceased." State v. McGettrick, *1303 31 Ohio St.3d 138, 140, 31 OBR 296, 509 N.E.2d 378, 380 (1987).
The McGettrick court found that "[i]t is in the interest of the defendant, the defendant's estate and society that any challenge initiated by a defendant to the regularity of a criminal proceeding be fully reviewed and decided by the appellate process." Id., 31 Ohio St.3d at 141, 509 N.E.2d at 381. Furthermore, the Ohio Court recognized:
In some cases the convicted criminal defendant's estate may possess a pecuniary interest in having the appeal fully determined. "* * * While death moots the sentence, renders impossible a new trial, and abates any fine imposed, the matter of costs remains. The state and the defendant (not to mention his family) have endured the strain, the tribulation and the expense of trial and appeal. Oftentimes rights other than those of an individual defendant are involved. The right to inherit, or to take by will or otherwise, may be affected." State v. Jones (1976), 220 Kan. 136, 137, 551 P.2d 801, 804. Accord Wetzel v. Ohio (1962), 371 U.S. 62, 83 S.Ct. 111, 9 L.Ed.2d 26, 24 O.O.2d 157, wherein Justice William O. Douglas, in his concurring opinion, after noting that court costs in Ohio are statutorily imposed upon convicted felons ..., [stated] that the "* * * decedent's wife and administratrix has a sufficient interest in protecting his estate from unlawful penalties to be substituted as a party and maintain this appeal."
McGettrick, 31 Ohio St.3d at 141, 509 N.E.2d at 381, f.n. 4. The Ohio Supreme Court further found that App.R. 29(A), which is practically identical to Mississippi Supreme Court Rule 43(a), applies to criminal cases as well as civil cases, so that after death, a criminal defendant may be substituted by his personal representative or by any party upon motion filed with the clerk of court. Id.
The Ohio rule allows for any party or representative to file a motion to substitute party if the defendant dies pending appeal. If no motion to substitute party is filed, "the court of appeals may properly dismiss the appeal as moot and vacate the original conviction." McGettrick, 31 Ohio St.3d at 142-43, 509 N.E.2d at 382. Thus, Ohio's default rule, in the event no request for substitution is made, is the abatement ab initio rule. The Ohio Court further held that upon death of a defendant after judgment of conviction but prior to the filing of his notice of appeal, the decedent's personal representative or counsel of record may file a notice of appeal within the prescribed time limits, and thereafter file a motion to substitute party in order to proceed with the appeal. If no notice of appeal is filed or is untimely filed, as in any other case, the conviction stands as valid. Id. at 142-43, 509 N.E.2d at 382-83.
Counsel for the appellant has requested that we develop a similar approach to that created by the Ohio Supreme Court; however, she would only ask, in the event the state files a suggestion of death on the record and motion to dismiss the appeal as moot, "that the defendant's estate and/or his legal counsel [have the] corresponding right to move the Court for a decision on the merits." She further points out that in this case, given the significant collateral matters involved, we should proceed to determine the merits of this appeal, but that "in most cases there would probably be no such motion filed and the appeal would indeed be moot." Presumably, Gollott's counsel would not have us change our present disposition of cases where the defendant dies pending appeal absent the proper motion(s) being filed and our determination that the collateral matters involved, if there be any, warrant full adjudication.
The state recommends that we maintain the current "bright line" rule for the sake of judicial economy, "rather than ... attempt to guess whether the outcome of the criminal appeal could have bearing on the civil trial." However, we have previously shown that there is not much guesswork needed to determine that in the present case the criminal conviction, if it stands, will preclude litigation of the wrongful death claim.
We find there are valid policy considerations in favor of both the abatement ab initio approach and our present law in this area, as well as problems with each. Upon the death of a defendant pending appeal, it is no more reasonable to deem the appeal moot and let the conviction stand, acting as though *1304 we have heard the appellant's arguments and found them meritless, than it is to automatically follow the abatement ab initio rule and pretend the defendant was never indicted, tried and found guilty.
There is yet another important consideration: our lawmakers and practitioners need to be made aware of errors committed at the trial court level. Leaving convictions intact without review by this Court potentially leaves errors uncorrected which will ultimately work to the detriment of our justice system. That coupled with the very real possibility that other interests will be affected by these convictions leads us to find that upon the death of a criminal defendant pending the outcome of his appeal, full review of the appeal, provided the proper motion(s) have been made, is the only fair path to follow.
We no longer find the "obvious miscarriage of justice" reasoning relied on by the Haines Court persuasive enough to continue to follow the minority rule. Today we adhere to our judicial conscience by recognizing that the death of a defendant who has perfected his right to appeal does not render his appeal moot and leave permanently his conviction in place. To the extent that they are inconsistent with this opinion, Haines, 428 So.2d 590 (Miss. 1983), and Berryhill, 492 So.2d 288 (Miss. 1986), are overruled.
Full review is the only way to preserve the presumption that the conviction is valid until overturned on appeal, while simultaneously preserving the vested right of the criminal defendant to his appeal. This rule also protects society, third parties, and the decedent's estate from being subjected to the force of a hollow conviction  one that remains a presumption for having not been fully adjudicated.
While we recognize that continuing an adversarial proceeding when one of the adversaries no longer exists is problematic, Supreme Court Rule 43(a) states:
If a party dies after a notice of appeal is filed or while a proceeding is otherwise pending in this Court, the personal representative of the deceased party may be substituted as a party on motion filed by the representative or by any party with the clerk of this Court. The motion of a party shall be served upon the representative in accordance with the provisions of Rule 25. If the deceased party has no representative, any party may suggest the death on the record and proceedings shall then be had as this Court may direct. If a party against whom an appeal may be taken dies after entry of a judgment or order in the lower court but before a notice of appeal is filed, an appellant may proceed as if death had not occurred. After the notice of appeal is filed, substitution shall be effected in this Court in accordance with this Rule 43(a). If a party entitled to appeal shall die before filing a notice of appeal, the notice of appeal may be filed by that party's personal representative, or, if there is no personal representative by that party's attorney of record within the time prescribed by these rules. After the notice of appeal is filed, substitution shall be effected in this Court in accordance with this Rule 43(a).
On its face, Rule 43(a) allows for a substituted party in place of a criminal defendant. Further, we find that if no motion for substitute party is filed within a reasonable amount of time, the majority rule in effect in the state and federal courts, abatement ab initio, is a more appropriate course of action than our present law in this area. Stated differently, abatement ab initio will hereafter be the default rule in the event no motion to substitute the deceased defendant is made.
Like the Ohio Court, we find that our substitution rule, Rule 43(a), permits the defendant's personal representative or attorney of record to file a notice of appeal within the normal prescribed time limits, and thereafter file a Motion To Substitute Party Appellant. Further, any party may file for substitution upon a suggestion of death on the record. Thus, the state, in order to avoid abatement ab initio of the proceedings, may file a Rule 43(a) motion, in which case we will substitute the decedent's representative, or where appropriate, counsel of record, as party appellant and determine the merits of the appeal. In this case, defense counsel has requested that she be substituted as party *1305 appellant. Given today's holding, the representative or counsel for the deceased will not typically make such a request because absent motion filed by the state for substitution, upon the death of a defendant pending appeal the abatement ab initio rule will apply.
The rule we announce today has no less application on petitions for rehearing or when a defendant dies pending appeal from a denial of post-conviction relief, as they too are appeals of right. However, if a defendant dies pending application to this Court for leave to proceed in trial court on post-conviction relief grounds, the application will be deemed moot and the conviction will remain intact. We base our reasoning here on the United States Supreme Court decision in Dove, 423 U.S. 325, 96 S.Ct. 579. We note further that the slippery slope the dissent warned of in McDonald with regard to applying this new rule to post-conviction relief cases is not as slippery in Mississippi  our Post-Conviction Relief Act limits the time within which a motion for relief may be brought:
(2) A motion for relief under this chapter shall be made within three (3) years after the time in which the prisoner's direct appeal is ruled upon by the supreme court of Mississippi or, in case no appeal is taken, within three (3) years after the time for taking an appeal from the judgment of conviction or sentence has expired, or in case of a guilty plea, within three (3) years after entry of the judgment of conviction.
Miss. Code Ann. § 99-39-5(2) (Supp. 1993). While the statute provides for exceptions to the three (3) year time limit, we do not face the same potential difficulties as in Wisconsin where a post-conviction relief motion may be brought at any time. McDonald, 424 N.W.2d at 417 (Justice Day dissenting).
The state's Motion to Dismiss the Appeal on Suggestion of Death is denied. Counsel's motion to fully adjudicate this appeal is well taken. Pursuant to Supreme Court Rule 43(a), defense counsel is substituted as party appellant and we will proceed with this appeal on the merits.
MOTION TO DISMISS APPEAL DENIED. COUNSEL OF RECORD IS SUBSTITUTED AS PARTY APPELLANT TO AWAIT DECISION BY THIS COURT ON THE MERITS OF THIS APPEAL.
HAWKINS, C.J., DAN M. LEE, PRATHER, P.JJ., and PITTMAN, BANKS, McRAE, JAMES L. ROBERTS and SMITH, JJ., concur.