# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-KA-00378-SCT

*HOWARD PAYTON a/k/a HOWARD "LIL DANK"*
*PAYTON*

*v.*

*STATE OF MISSISSIPPI*

DATE OF JUDGMENT:                01/07/2016
TRIAL JUDGE:                     HON. ANTHONY ALAN MOZINGO
COURT FROM WHICH APPEALED:       LAMAR COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          OFFICE OF THE STATE PUBLIC
                                 DEFENDER
                                 BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: KATY T. GERBER
DISTRICT ATTORNEY:               HALDON J. KITTRELL
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     APPEAL DISMISSED - 03/21/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.    During the early morning hours of September 19, 2010, N.B., a sophomore at the

University of Southern Mississippi, was kidnapped and brutally raped by Howard Payton,

a/k/a "Lil Dank," a/k/a "Supreme." N.B. testified that Payton ran up to her vehicle, put a box

cutter or knife to her throat, and said, "where is the [expletive] money?" N.B. told Payton

that she did not have any money. Payton told her, "quit [expletive] lying. Where is the

money?" Payton grabbed N.B.'s neck, pushed her head down, and shoved her over to the

passenger's seat. Payton sat in the driver's seat of N.B.'s vehicle and drove her to a remote location. Payton then forced N.B. to perform oral sex. N.B. began to cry and begged Payton to let her go, but he told her to stop complaining and to "just do it." Payton then pulled N.B. out of the car and forced her to perform oral sex until she vomited on him. Payton forced N.B. to lick her vomit off of him. Payton then put on a condom and raped N.B. vaginally. Payton attempted to rape N.B. anally, but again penetrated her vaginally. After that, Payton removed the condom and forced N.B. to perform oral sex again. Payton ejaculated in N.B.'s mouth and forced her to swallow his ejaculate, "because he didn't want any proof." He then forced her to remove her clothing and to lie on the ground. Payton told N.B. that if she told anyone about what he had just done, he would kill her. Payton then took N.B.'s tank top and her glasses, got back into N.B.'s car, and left. N.B. was left alone in the dark in an unfamiliar location. N.B. found a nearby road and walked to a stoplight. She was able to flag down two women who were driving by. The women drove N.B. to the hospital. On the way to the hospital, N.B. called 911 to report what had just occurred.

¶2.     At the June 2014 term, a duly empaneled, sworn, and charged grand jury comprised of citizens of Lamar County returned an indictment[1] charging Payton for the kidnapping and rape of N.B.[2]

¶3.     At trial, *inter alia*, the State presented definitive scientific evidence of guilt. Payton's DNA matched the DNA sample obtained from N.B.'s rape kit so closely that the probability

---

[1] *See* Miss. Const. art. 3, §§ 26, 27.

[2] *See* Miss. Code Ann. §§ 13-5-1 to -97 (Rev. 2012).

2

of finding someone other than Payton with the same DNA profile was less than one in 999 trillion.[3] A petit jury comprised of twelve citizens of Lamar County found Payton guilty as charged. Upon his conviction, a duly elected circuit judge sentenced Payton as a habitual offender[4] to a thirty-year term for kidnapping and three forty-year (less one day) terms for each rape count. The order of conviction, which was signed by the trial judge and filed on January 7, 2016, provided that the sentences were to be served consecutively. The same day, the trial judge signed an order transporting Payton to the custody of the Mississippi Department of Corrections in Rankin County immediately. According to Uniform Rule of Circuit and County Court Practice 10.05, which was in place at that time, any post-trial motion for a new trial was to be filed within ten days. URCCC 10.05.

¶4. It was not until January 25, 2016, that Payton filed a twelve-page pro se motion for a judgment notwithstanding the verdict (JNOV), or, in the alternative, a new trial. The State did not raise the untimeliness of the motion. In fact, the State did not respond to the motion. The trial judge considered the substantive issues raised in the motion and, finding no merit, denied Payton's requests for relief one week later on February 1, 2016. However, the order was not file stamped until February 4, 2016. Upon entry of that order, Payton's notice of

---

[3] The estimated global population in 2010 was 6.9 billion. Population Reference Bureau, *2010 World Population Data Sheet* (July 23, 2010), https://www.prb.org/2010wpds/. Payton's DNA was also confirmed as the semen contributor in two other rape cases.

[4] Harris's habitual-offender sentence was based on the following convictions: (1) sale of a controlled substance in Forrest County on August 20, 2001; (2) possession of a controlled substance in Lamar County on February 12, 2004; and (3) possession of a controlled substance in Forrest County on July 13, 2010. Harris's criminal history reveals eighteen other criminal charges in Forrest County between June 2008 and January 2016.

appeal was to be filed within thirty days. Miss. R. App. P. 4(e). On the same day that the trial judge signed the order denying Payton's post-trial motion, Payton signed a request for a copy of the trial court transcript. However, Payton's request was not file stamped until February 5, 2016. Payton's request for the trial transcript was granted by the trial court without contest by the State on February 12, 2016. It was not file stamped until February 17, 2016.

¶5.    The record reflects five filings by Payton on Monday, February 29, 2016: (1) notice of appeal; (2) application to proceed *in forma pauperis*; (3) designation of the record; (4) certificate of compliance; and (5) motion for appointment of counsel. Each of these filings included its own certificate of service to the circuit clerk of Lamar County, the Lamar County District Attorney's Office, and the Lamar County circuit judge certifying that they were mailed on February 29, 2016.[5] Additionally, Payton's application for *in forma pauperis* status was sworn and subscribed before notary Jessica Pearl Sellers on February 29, 2016. Without explanation, these filings were not file stamped by the circuit clerk until Wednesday, March 9, 2016.

¶6.    On March 9, 2016, the trial court granted Payton *in forma pauperis* status for this appeal. It was not file stamped until March 10, 2016. The trial judge also signed an order on March 9, 2016 appointing Payton counsel. That order was not file stamped until March 14, 2016. The State did not contest either filing. Under the trial court's order, the State provided Payton counsel via the Indigent Appeals Division of the Office of the State Public

---

[5] The certificate of compliance was also mailed to the clerk of the Mississippi Supreme Court.

Defender. George T. Holmes entered an appearance on Payton's behalf. A few days before Payton's appeal brief was due, Payton died.

¶7.    Holmes then filed a suggestion of death. Holmes subsequently pleaded that no substitution of parties had been requested and that Payton had no known personal representative.[6] Holmes then moved for abatement *ab initio*. He asked that the Court allow a thirty-day period or other reasonable amount of time to allow any personal representative of Payton to come forward and to move for a substitution for the deceased appellant. Holmes requested, if no such motion was made, that the Court enter an order of abatement voiding the entire criminal proceeding against Payton from its inception, nullifying the petit jury's verdict and the circuit judge's judgment of conviction and remanding the case back to the same trial court with instructions to dismiss the grand jury's indictment, all without notice to the victim, N.B.

¶8.    No response was filed either to the suggestion of death or to the motion for abatement *ab initio*. A single-justice order was entered staying briefing for a period of thirty days to allow any personal representative of Payton to move for substitution. No attempt to substitute was made.

---

[6] Mississippi Rule of Appellate Procedure 43(a) provides, in relevant part,

> If a party dies after a notice of appeal is filed or while a proceeding is otherwise pending, the personal representative of the deceased party may be substituted as a party on motion filed by the representative or by any party with the clerk of the Supreme Court . . . . If the deceased party has no representative, any party may suggest the death on the record and proceedings shall then be had as the appropriate appellate court may direct.

Miss. R. App. P. 43(a).

¶9.	The Court considered the motion for abatement *ab initio* en banc on February 8, 2018, and authorized the issuance of a single-justice order requiring supplemental briefing "[d]ue to the uniqueness of the petition, the seeking of extraordinary relief and the development of constitutional and statutory law since this Court's holding in *Gollott v. State*, 646 So. 2d 1297, 1299 (Miss. 1994) . . . ." Order, *Payton v. State*, No. 2016-KA-00378-SCT (Miss. Feb. 13, 2018). For those stated causes, counsel for Payton and the State were ordered to address the following:

1.	What statutory or constitutional authority exists, if any, for this Court to nullify or negate (a) a facially valid indictment from a constitutionally [e]mpaneled Grand Jury, (b) a facially valid, guilty jury verdict(s), and (c) facially valid judgments and sentences of a circuit court absent a ruling of error?

2.	Since 1994, when *Gollott* was published, Section 26A in Article 3 of the Mississippi Constitution was adopted. It reads:

> (1) Victims of crime, as defined by law, shall have the right to be treated with fairness, dignity and respect throughout the criminal justice process; and to be informed, to be present and to be heard, when authorized by law, during public hearings.
>
> (2) Nothing in this section shall provide grounds for the accused or convicted offender to obtain any form of relief nor shall this section impair the constitutional rights of the accused. Nothing in this section or any enabling statute shall be construed as creating a cause of action for damages against the state or any of its agencies, officials, employees or political subdivisions.
>
> (3) The Legislature shall have the authority to enact substantive and procedural laws to define,

6

implement, preserve and protect the rights guaranteed to victims by this section.

Miss. Const. Art. 3, § 26A. Address the ramifications, if any, of Section 26A on this proceeding.

3. Also in 1998, the Legislature adopted the Mississippi Crime Victims' Bill of Rights. See Miss. Code Ann. §§ 99-43-1, *et seq.* Address the ramifications, if any, of this Bill of Rights, including but not limited to Section 99-43-35, on this proceeding.

4. In 2009, the Legislature passed the Compensation to Victims of Wrongful Conviction and Imprisonment Statute, recognizing and providing compensation for wrongfully incarcerated persons. *See* Miss. Code Ann. §§ 11-44-1, *et seq*. Address the ramifications, if any, of this statute, including but not limited to sections 11-44-3(1)(b) and (1)(c), 11-44-7(1)(a)(ii)(1) and (4), and 11-44-13, on this proceeding.

5. Whether this Court should overrule *Gollott v. State*, 646 So. 2d 1297, 1299 (Miss. 1994), and reinstate *Haines v. State*, 428 So. 2d 590 (Miss. 1983), and *Berryhill v. State*, 492 So. 2d 288 (Miss. 1986).

*Id.* The State and Holmes filed supplemental briefs addressing the above issues.[7]

### DISCUSSION

¶10. In 1983, this Court was tasked with deciding a question of first impression in Mississippi: if a convicted defendant dies while his appeal is pending, what should occur with respect to his appeal and/or judgment of conviction? *Haines v. State*, 428 So. 2d 590 (Miss. 1983), *overruled by Gollott v. State*, 646 So. 2d 1297 (Miss. 1994). In *Haines*, the defendant was convicted of murder and sentenced to life imprisonment. He later died while

---

[7] The State alternatively asked whether, were the Court not to overrule *Gollott*, the Court should allow Payton's conviction to stand because his notice of appeal was not timely filed. The untimeliness of Payton's notice of appeal was not advanced by the State until this Court ordered supplemental briefing. *See supra*, ¶¶ 4-6. Thus, we deem any claim of untimeliness to have been waived.

his appeal was pending. *Id.* The State of Mississippi filed a suggestion of Haines's death and requested that the appeal be dismissed as moot. *Id.* Haines's attorneys countered with a motion to dismiss the appeal, to vacate the judgment of the lower court, and to remand the cause to the lower court with instructions to dismiss the indictment—*i.e.*, abatement *ab initio*.

¶11.   The *Haines* Court noted that although a majority of jurisdictions, including federal courts, followed the abatement *ab initio* doctrine, other jurisdictions did not. *Id.* at 591. Those jurisdictions chose to dismiss the deceased appellant's appeal as moot, preserving the conviction. *Id.* at 591-92. The *Haines* Court examined both approaches, turning first to Mississippi precedent concerning the validity of judgments. *Id.* at 591. It found the Court had previously held that "a judgment of conviction in a lower court removes the presumption of innocence and the judgment is considered to be valid." *Id.* The Court reasoned,

> [U]nless and until the judgment of the trial court is reversed, the defendant stands convicted, is no longer presumed to be innocent of the crime for which he is convicted, and may be impeached by that conviction. When a jury in circuit court returns a verdict of guilty, it is a conviction of the crime charged, and unless and until it is reversed by this Court, the conviction stands . . . .

*Id.* (quoting *Nicholson v. State*, 254 So. 2d 881, 884 (Miss. 1971) (citing *Bucklew v. State*, 192 So. 2d 275 (Miss. 1966))). The Court then discussed an Indiana Supreme Court decision that rejected abatement *ab initio* in favor of dismissing a deceased appellant's appeal as moot.

> We do not see that the dismissal of the appeal, without more, *denies any rights granted or protected by the statutes or the constitutional provisions*. Such rights were personal to and exclusively those of the defendant. Although a criminal conviction carries a definite "fall-out" that extends beyond the person of the defendant, we are aware of no right to be free of such, even if such conviction be erroneous.

8

*Id.* at 591 (emphasis added) (quoting ***Whitehouse v. State***, 364 N.E.2d 1015, 1016 (Ind. 1977)). The ***Haines*** Court then quoted the Indiana Supreme Court's discussion regarding the validity of a judgment of conviction, holding that absent a successful appeal, the defendant stands convicted:

> The presumption of innocence falls with a guilty verdict. At that point in time, although preserving all of the rights of the defendant to an appellate review, for good and sufficient reasons we presume the judgment to be valid, until the contrary is shown. To wipe out such a judgment, for any reason other than a showing of error, would benefit neither party to the litigation and appears to us likely to produce undesirable results . . . . It, therefore, is our opinion that it would be unwise for us to reach out and adopt a policy favoring survivor interests of questionable validity.

*Id.* at 591-92 (quoting ***Whitehouse***, 364 N.E.2d at 1016).

¶12.    The ***Haines*** Court also considered the countervailing policy of abatement *ab initio*, citing ***United States v. Pauline***, 625 F.2d 684, 685 (5th Cir. 1980):

> Abatement of the entire course of the proceedings has several significant effects: if the sentence included a fine, abatement *ab initio* prevents recovery against the estate, and, ultimately, the heirs; the abated conviction cannot be used in any related civil litigations against the estate; and arguably the family is comforted by restoration of the decedent's "good name."[8]

*Id.* at 591 (quoting ***Pauline***, 625 F.2d at 685). After considering the competing rationales, the ***Haines*** Court definitively rejected abatement *ab initio*. *Id.* at 592. Recognizing that "a judgment of conviction in a lower court removes the presumption of innocence and the judgment is considered to be valid[,]" this Court clearly favored the minority rule. *Id.* at 591.

---

[8] In this case, any speculation regarding the restoration of Payton's "good name" lacks credulity, considering the jury's finding of guilt for the despicable acts inflicted upon his victim, not to mention his criminal history. *See supra*, ¶¶ 1-3.

The ***Haines*** court dismissed the appeal as moot, leaving history unrevised and the deceased appellant's conviction intact. ***Id.*** at 591-92.

¶13.    Three years later, this issue was raised again. ***Berryhill v. State***, 492 So. 2d 288, 289 (Miss. 1986), *overruled by* ***Gollott v. State***, 646 So. 2d 1297 (Miss. 1994). Following the precedent of ***Haines***, the ***Berryhill*** Court unequivocally held "that the minority rule is sound when considering our decisions on the validity of judgments. Therefore, the motion to abate and vacate the judgment of conviction is overruled and the State's motion to dismiss the appeal as moot is sustained." ***Berryhill***, 492 So. 2d at 289 (quoting ***Haines***, 428 So. 2d at 592).

¶14.    ***Haines*** and ***Berryhill*** remained the established law of this state until 1994, when the ***Gollott*** court—without citing any authority or providing any legal justification to abandon the principle of stare decisis—rejected the decisions expressly announced in ***Haines*** and ***Berryhill***:

> We are no longer of the opinion that the abatement *ab initio* rule obviously results in a "miscarriage of justice." There are essentially three reasons for penal statutes in our justice system: (1) to protect society from dangerous individuals; (2) to hopefully rehabilitate convicted criminals; and, (3) to deter others from violating the law. Following the abatement *ab initio* rule does not undermine any of these purposes. What is obvious is that society needs no protection from the deceased, nor can the deceased by rehabilitated. Moreover, other potential criminals will be no less deterred from committing crimes.

***Gollott v. State***, 646 So. 2d 1297, 1300 (Miss. 1994).[9]

---

[9] If one relied solely on this faulty logic, which was not cited, briefed, or argued by either party in ***Gollott***, all convicted criminals who die in prison—regardless of whether their appeal is pending—should have their indictments and convictions vacated.

10

¶15.    The *Gollott* Court jettisoned established law set by *Haines* and *Berryhill*, nullifying a facially valid indictment from a constitutionally empaneled grand jury, negating a facially valid guilty verdict by a lawfully empaneled petit jury, nullifying facially valid judgments of a circuit judge (*i.e.*, the judgment of conviction, orders denying post-trial motions), and restoring a convicted killer to the status of an innocent man, all without any finding of reversible error at any stage of the proceeding.  The *Gollott* Court cited no statutory or constitutional authority for its rejection of the established rule of law, rather opining that *Berryhill* and *Haines* failed to satisfy the purpose of penal statutes.  The *Gollott* Court cited not one pernicious error that necessitated a change in the law.  *See Stone v. Reichman-Crosby Co.*, 43 So. 2d 184, 190 (Miss. 1949) (Courts will depart from stare decisis when such departure is necessary to avoid the perpetuation of pernicious error.).  Finally, the *Gollott* court failed to identify the source of its ruling, because no statutory or constitutional authority existed then (or now) for this Court to abate not only an appeal, but the entire criminal proceeding.  Indeed, "abatement ab initio is not grounded in the constitution or in statute, but is instead a court-created common law doctrine."  *People v. Griffin*, 328 P.3d 91, 92 (Colo. 2014) (citing *United States v. Estate of Parsons*, 367 F.3d 409, 415 (5th Cir. 2004)).

¶16.    Four years after *Gollott* overruled *Haines* and *Berryhill* without offering legal justification, a nationwide victims' rights movement gained steam in Mississippi.  The citizens of Mississippi voted to amend the Mississippi Constitution to grant constitutional rights to crime victims: "Victims of crime, as defined by law, shall have the right to be

11

treated with fairness, dignity and respect throughout the criminal justice process; and to be informed, to be present and to be heard, when authorized by law, during public hearings." Miss. Const. art. 3, § 26A. The Mississippi Constitution further enabled the Legislature "to enact substantive and procedural laws to define, implement, preserve and protect the rights guaranteed to victims by this section." *Id.*

¶17. That same year, the Legislature enacted the Mississippi Crime Victims' Bill of Rights. Miss. Code Ann. §§ 99-43-1 to -101 (Rev. 2015). The Legislature provided that "[t]he purpose of this chapter is to ensure the fair and compassionate treatment of victims of crime, to increase the effectiveness of the criminal justice system by affording rights and considerations to the victims of crime, and to preserve and protect victims' rights to justice and fairness in the criminal justice system." Miss. Code Ann. § 99-43-1 (Rev. 2015). Under this chapter, victims of crime were formally recognized and accorded substantial rights, including, *inter alia*, the right to be provided information by law enforcement,[10] the right to confer with the prosecuting attorney,[11] the right to receive a transcript of the proceedings,[12] *the right to be present throughout all proceedings*,[13] and the right to participate during any entry of a plea of guilty, sentencing or restitution proceeding.[14]

---

[10] Miss. Code Ann. § 99-43-7 (Rev. 2015).

[11] Miss. Code Ann. §§ 99-43-11, -13 (Rev. 2015).

[12] Miss. Code Ann. § 99-43-15 (Rev. 2015).

[13] Miss. Code Ann. § 99-43-21 (Rev. 2015).

[14] Miss. Code Ann. § 99-43-33 (Rev. 2015).

¶18. In the decades since *Gollott* departed from established precedent, our Constitution and state law were amended to recognize victims' rights. The landscape has changed to protect victims from being traumatized again. Since our Constitution was amended and the Crime Victims' Bill of Rights was enacted, we have not had the opportunity to address a motion for abatement *ab initio*. Good cause exists today to do so.

¶19. "[F]undamental jurisprudential policy requires that prior applicable precedent usually must be followed even though the case, if considered anew, might be decided differently by the current court." *Hye v. State*, 162 So. 3d 750, 755 (Miss. 2015). This policy "is based on the assumption that consistency and definiteness in the law are the major objectives of the legal system." *Id.* (citing *Laurel Daily Leader, Inc. v. James*, 224 Miss. 654, 681, 80 So. 2d 770, 780-81 (1955) (Gillespie, J., special opinion)). However, "stare decisis is not an inexorable command." *Bester v. State*, 188 So. 3d 526, 529 (Miss. 2016) (quoting *Payne v. Tennessee*, 501 U.S. 808, 828, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991)). Stare decisis "is flexible enough to allow the Court to admit change under certain limited circumstances where the previous rule of law would *perpetuate error and wrong would result* if the decisions were followed." *Hye*, 162 So. 3d at 755 (alterations omitted) (emphasis added) (citing *Laurel*, 654 So. 2d at 781) (Gillespie, J., special opinion)). This Court has found that stare decisis "is subordinate to legal reason and justice, and courts 'will depart therefrom when such departure is necessary to avoid the perpetuation of pernicious[15] error.'" *Hye*, 162

---

[15] *Pernicious*, Webster's II New College Dictionary (3d ed. 2001) ("Causing great harm: ruinous"); *see also Hye*, 162 So. 3d at 765 n.6 (Kitchens, J., dissenting) ("Pernicious" is defined as "having a harmful effect, especially in a gradual or subtle way.")

So. 3d at 755 (quoting **Stone**, 43 So. 2d at 190). The **Gollott** Court did not address whether departing from **Haines** and **Berryhill** would perpetuate error or whether wrong would result if **Haines** and **Berryhill** were followed.

¶20. Whether to abandon abatement *ab initio* is a question that has been considered by many courts post-**Gollott**.[16] The Supreme Court of Alaska undertook such a review in 2011. **Carlin v. State**, 249 P.3d 752, 754 (Alaska 2011). Like Mississippi, Alaska was part of a national movement to recognize the constitutional and statutory rights of crime victims, following its supreme court's adoption of the abatement *ab initio* doctrine. **Id.** at 758. The Alaska Legislature had passed "a comprehensive Alaska Crime Victims' Rights Act," and "Alaska's voters [had] overwhelmingly approved the Rights of Victims of Crime

---

[16]In **Carlin v. State**, the Alaska Supreme Court observed,

> It appears that the highest courts in 41 states have addressed abatement in some manner. The courts in [17] states have continued to apply strictly the doctrine of abatement *ab initio*. Eight states generally dismiss a deceased defendant's appeal but leave the conviction intact. Two states have unique approaches; Alabama places a particular notation in the deceased defendants record, while Oregon gives judges discretion both to dismiss the appeal and to vacate the judgment. Eight states allow some mechanism for the appeal to continue with substitution; if no substitution occurs some of those states abate the conviction while others allow it to stand.

**Carlin v. State**, 249 P.3d 752, 761 (Alaska 2011) (footnotes omitted) (citations omitted). Montana now allows for substitution; if no substitution is sought, then the appeal is dismissed as moot. **State v. Benn**, 364 Mont. 153, 274 P.3d 47 (2012). On March 13, 2019, Massachusetts abandoned abatement *ab initio* in favor of dismissing the appeal as moot, finding that "the doctrine of abatement *ab initio* is outdated and no longer consonant with the circumstances of contemporary life, if, in fact, it ever was." **Commonwealth v. Hernandez**, No. SJC-12501, 2019 WL 1141521, at *1 (Mass. Mar. 13, 2019).

14

Amendment to the Alaska Constitution[,]" providing "substantial constitutional and statutory rights to crime victims during all phases of the criminal justice process." *Id.*

¶21.    Given this "dramatic shift" in the law, the Alaska Supreme Court addressed the propriety *vel non* of abatement *ab initio*.  *Id.*  The Court found that the abatement *ab initio* doctrine was contrary to crime victims' rights under the Alaska Constitution:

> *Hartwell*'s[17] assertion that the "underlying principles of penal administration in Alaska are reformation and protection of the public" is thus no longer complete. Alaska's statutes and its constitution now also require the criminal justice system to accommodate the rights of crime victims. The abatement of criminal convictions has important implications for these rights. Therefore, the expansion and codification of victims' rights since *Hartwell* provides the changed conditions needed to satisfy the first element of the test for overruling precedent.

*Id.* at 759.

¶22.    The Alaska Supreme Court examined the increasing trend of other state courts to reject the abatement *ab initio* doctrine.  *Id.*  The Court noted that "a steadily growing number of state courts have rejected the [abatement *ab initio*] doctrine" due to "the unfairness to crime victims of abating criminal convictions and the doctrine's inconsistency with the presumption of guilt following a jury conviction."  *Id.*; *see also Haines*, 428 So. 2d at 591, and *Berryhill*, 492 So. 2d at 289.  For example, in *State v. Korsen*, the Idaho Supreme Court noted that the abatement *ab initio* doctrine "is particularly unfair to crime victims who have participated in often times painful trials only to see a hard won conviction overturned, not because of any error in the criminal proceedings, but simply as a matter of routine procedure

---

[17] In *Hartwell v. State*, 423 P.2d 282 (Alaska 1967), *overruled by Carlin*, 249 P.2d at 754, Alaska adopted abatement *ab initio*.

15

based upon the arbitrary timing of the defendant's death." *State v. Korsen*, 111 P.3d 130, 134 (Idaho 2005).

¶23.    Likewise, the Alabama Supreme Court rejected abatement *ab initio*, noting its constitutional and statutory protections for victims of crime and "the callous impact [abatement *ab initio*] necessarily has on the surviving victims of violent crime." *Wheat v. State*, 907 So. 2d 461, 463 (Ala. 2005) (emphasis omitted) (quoting *People v. Robinson*, 699 N.E.2d 1086, 1091 (Ill. 1998), *judgment vacated by People v. Robinson*, 719 N.E.2d 662, 663 (Ill. 1999)).  Other states have followed suit. *See*, *e.g.*, *State v. Benn*, 274 P.3d 47, 50 (Mont. 2012) (discontinuing application of abatement *ab initio*, noting the negative impact on crime victims); *State v. Devin*, 142 P.3d 599 (Wash. 2006) (declining to abate conviction automatically upon appellant's death, noting its conflict with modern laws that compensate victims for their suffering); *People v. Griffin*, 328 P.3d 91, 92 (Colo. 2014) (declining to apply abatement *ab initio* to matters pending on certiorari review, noting that other courts have questioned its impact on the rights of crime victims); *Brass v. State*, 325 P.3d 1256, 1258 (Nev. 2014) (denying motion for abatement *ab initio*, finding that "[v]acating the judgment and abating the prosecution from its inception undermines the adjudicative process and strips away any solace the victim or the victim's family may have received from the appellant's conviction"); and *Surland v. State*, 895 A.2d 1034, 1035 (Md. 2006) (declining to adopt abatement *ab initio*, noting the concerns of other courts regarding abatement's impact on victim restitution).

¶24. The Alaska Supreme Court then examined whether more good than harm would result were it to depart from precedent and overrule its prior adoption of abatement *ab initio*. *Carlin*, 249 P.3d at 761. The Court balanced "the benefits of adopting a new rule against the benefits of stare decisis: providing guidance for the conduct of individuals, creating efficiency in litigation by avoiding the relitigation of decided issues, and maintaining public faith in the judiciary." *Id.* at 761-72. The Court found that

> [t]hese countervailing interests do not weigh heavily in this case. It is unclear how an individual would rely on the rule adopted in *Hartwell*. That is, it is unlikely that a person would commit a crime because he believed that, upon his death while his appeal was pending, his conviction would be abated. As for the efficiency rationale, while it is true that overturning *Hartwell* would result in some additional litigation of the continued appeals of deceased defendants, the number of such cases should be small. As for the third factor, public faith in the judiciary, allowing continued appeals will protect both victims and defendants by providing the opportunity to have criminal charges fully litigated and decided.

*Id.* at 762.

¶25. Having balanced the benefits of stare decisis with the adoption of a new rule, the Alaska Supreme Court found that substitution was the better course and held that "either the State or the defendant's estate may request substitution, allowing another party to be substituted for the defendant." *Id.* at 762-63. Under this approach, substitution may be sought, and the appeal proceeds; if no substitution is sought, the appeal is dismissed, and the conviction remains intact. *Id.* at 766. The Court found that this approach struck the correct balance between protecting a defendant's right to appeal and a victim's rights under the Alaska Constitution. *Id.* at 762.

17

¶26.     We find Alaska's approach beneficent, because it fairly balances defendants' and victims' rights alike. Like Alaska, Mississippi has experienced a dramatic shift in the law since **Gollott**. Because of the increased recognition of crime victims in both our Constitution and statutory law, we find that departure from the abatement *ab initio* doctrine is necessary to avoid the perpetuation of pernicious error. **Hye**, 162 So. 3d at 755. The abatement *ab initio* doctrine tramples upon victims' rights by denying victims "fairness, respect and dignity." **Korsen**, 111 P.3d at 135. Moreover, we find that the policies undergirding stare decisis—consistency and definiteness in the law—are not served by continued application of the abatement *ab initio* doctrine. We agree with the Alaska Supreme Court that it is "unlikely that a person would commit a crime because he believed that, upon his death while his appeal was pending, his conviction would be abated." **Carlin**, 249 P. 3d at 762. Finally, we reiterate that no constitutional or statutory authority existed for the **Gollott** Court to undo the action of a lawfully constituted grand jury, petit jury, and circuit judge, absent reversible error's being affirmatively established. *See*, *e.g.*, **Newell v. State**, 308 So. 2d 71, 72 (Miss. 1975). Accordingly, we find that this Court's previous decision in **Gollott v. State** was wrongly decided and should be overruled.

¶27.     This Court adopts Alaska's balanced approach in **Carlin**, which protects victims' rights—a factor not considered by the **Gollott** Court. *See* **Morris v. Slappy**, 461 U.S. 1, 14, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983) ("[I]n the administration of criminal justice, courts may not ignore the concerns of victims."). Under this approach, the estate or personal representative may move for substitution and seek to reverse the conviction, should it choose

18

to do so. *See Carlin*, 249 P.3d at 763 ("allowing the defendant's appeal to continue when the defendant's estate does not wish it would undermine[s] the right to appeal that substitution is meant to protect"). If the estate or a personal representative declines to substitute, the appeal is dismissed as moot, and the conviction remains intact. This approach strikes a balance between the rights of the victim with the rights of the accused, the approach *Gollott* ignored.

¶28. We recognize that the abatement *ab initio* doctrine, which first surfaced over one-hundred years ago, was created in part to avoid punishing the decedent's family. *State v. Furth*, 82 Wash. 665, 667, 144 P. 907 (1914), *overruled by Devin*, 142 P.3d at 599. "In one of the earliest expressions of the policy underlying abatement, *Pomeroy* said that 'the fundamental principle applicable to this case is that the object of criminal punishment is to punish the *criminal*, and not to punish his family.'" *Devin*, 142 P.3d at 601 (quoting *United States v. Pomeroy*, 152 F. 279, 282 (C.C.S.D.N.Y. 1907), *rev'd on other grounds sub nom. United States v. N.Y. Cent. & Hudson River R.R.*, 164 F. 324 (2d Cir. 1908)). We think this sound principle should be recognized in Mississippi. "There is no justice in punishing [the decedent's] family for his offense." *Pomeroy*, 152 F. at 279. Thus, although we overrule *Gollott* and decline to abate a deceased appellant's criminal conviction *ab initio*, we "do not preclude courts from abating financial penalties still owed to the county or State, as opposed to restitution owed to victims, where the death of a defendant pending an appeal creates a risk of unfairly burdening the defendant's heirs." *Devin*, 142 P.3d at 606. Again, this

approach strikes the appropriate balance between the victim's rights and the defendant's rights.

¶29. To be clear, today's decision does not minimize the rights exercised by Payton under the Mississippi Constitution. Article 3, section 26 provides that the accused shall have the right (1) to be heard by himself or counsel, or both; (2) to demand the nature and cause of the accusation; (3) to be confronted by the witnesses against him; (4) to have compulsory process for obtaining witnesses in his favor; (5) to a speedy and public trial by an impartial jury of the county where the offense was committed; and (6) not to be compelled to give evidence against himself.

¶30. In this case, over the course of the trial-court proceedings, the circuit judge appointed four different attorneys to represent Payton. Payton ultimately chose to proceed pro se, with two lawyers appointed to serve as his legal advisors. During trial, Payton was confronted by the victim, and Payton personally cross-examined her. Payton was granted the right to send the DNA evidence to a lab of his own choosing, at the State's expense, to retest his own DNA. Payton was additionally appointed his own DNA expert, paid for by the citizens of Lamar County. The trial court accommodated Payton's every request concerning DNA testing, until Payton ultimately refused to provide another DNA sample.[18] Payton additionally received his right to a speedy trial and an impartial jury, and he was not compelled to give evidence against himself.

---

[18] Payton requested that the trial court allow his sister, an owner of a beauty salon, to collect his DNA sample, instead of law enforcement. The trial court denied his request.

¶31. Payton was accorded each and every right guaranteed him under the Constitution. Yet now, we are asked to ignore N.B.'s constitutional right "to be treated with fairness, dignity and respect . . . ." Miss. Const. art. 3, § 26A. We decline to do so. Because our Constitution balances the rights of the accused with the rights of the victim, we—as guardians of the Constitution—can do no less. Payton has been accorded his constitutional rights; N.B. shall be accorded hers.

¶32. Ample time was provided for the estate or any personal representative of Payton to move for substitution. No response was filed. Accordingly, we dismiss Payton's appeal as moot and leave his conviction intact.

## CONCLUSION

¶33. Because of the increased recognition of crime victims in our constitution and statutory law, and because the policies undergirding stare decisis are not served by continued application of the abatement *ab initio* doctrine, we expressly overrule ***Gollott***. Since no motion was filed for substitution pursuant to Rule 43(a), we dismiss Payton's appeal as moot and leave his conviction intact. Miss. R. App. P. 43(a).[19] Holmes's motion to abate Payton's conviction *ab initio* is denied.

¶34. **APPEAL DISMISSED.**

**COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. KING, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.**

---

[19] Rule 43(a) applies equally to civil and criminal proceedings, notwithstanding the comment to the contrary.

**KING, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶35. This appeal should be dismissed as untimely; but because this Court reaches the merits of the issue of what procedure to employ when a convicted defendant dies while the appeal is pending and no one moves to substitute, I believe that this Court should address each appeal on a case-by-case basis. Accordingly, I respectfully dissent in part.

¶36. Payton filed an untimely notice of appeal. The Mississippi Rules of Appellate Procedure provide that "[a]n appeal *shall* be dismissed if the notice of appeal was not timely filed pursuant to Rules 4 or 5." Miss. R. App. P. 2(a)(1) (emphasis added). In criminal cases, this Court may suspend that rule "[i]n the interest of expediting decision, or for other good cause shown[.]" Miss. R. App. P. 2(c). Because dismissing this appeal accomplishes the same result as the majority reaches on the merits, I do not find any "good cause shown" for suspending the Mississippi Rules of Appellate Procedure and allowing this untimely appeal. Nor does allowing the untimely appeal expedite any decision, as dismissing the appeal would be the more expeditious procedure.

¶37. Alternatively, because the Court does reach the merits, I disagree with the all-or-nothing approach the majority and our caselaw employ. The majority bases its decision to overrule *Gollott* and the abatement *ab initio* doctrine primarily on a recognition of crime victims' rights. While I completely agree with the majority that crime victims' rights should certainly be part of our analysis in these cases, I do not agree that those rights *always* mandate dismissing an appeal as moot when a defendant has died and no substitution has been made. For example, how do crime victims' rights outweigh a defendants' rights in the

22

case of a victimless crime such as possession of a small amount of marijuana? The majority fails to address how victims' rights *automatically* outweigh those of the defendant and/or his heirs in a victimless crime. For this reason, I believe we should determine the appropriate course in the rare instance when a convicted defendant dies pending appeal and no substitution is made on a case-by-case basis. A case-by-case approach would strike the appropriate balance between the rights of victims and defendants, instead of automatically applying either abatement *ab initio* or dismissing the appeal as moot.

¶38.    Rule 43(a) of our Rules of Appellate Procedure provides for substitution when a party dies pending appeal. Miss. R. App. P. 43(a). However, "[i]f the deceased party has no representative, any party may suggest the death on the record and proceedings shall then be had *as the appropriate appellate court may direct*." *Id.* (emphasis added). This Court need not adopt a bright line rule for these cases; our Rules allow us to make an appropriate determination in each case. The Court in *Gollott* correctly observed that

> [T]here are valid policy considerations in favor of both the abatement *ab initio* doctrine and our present law in the area [dismissing the appeal as moot and leaving the conviction intact], as well as problems with each. Upon the death of a defendant pending appeal, it is no more reasonable to deem the appeal moot and let the conviction stand, acting as though we have heard the appellant's arguments and found them meritless, than it is to automatically follow the abatement *ab initio* rule and pretend the defendant was never indicted, tried and found guilty."

*Gollott v. State*, 646 So. 2d 1297, 1303-04 (Miss. 1994). Our rules do not demand an all-or-nothing approach, nor does justice require that we adopt an all-or-nothing approach in these uncommon situations. This Court should determine whether abatement *ab initio* or dismissing the appeal as moot is the appropriate action in each individual case. In doing so,

this Court should consider, and the parties should present, relevant arguments describing with particularity the rights of the victim or victims impacted, the defendant's constitutional rights impacted, the collateral effects on the defendant's estate or heirs, and any other relevant issues.

¶39.    I believe that this Court should exercise judicial restraint and dismiss this appeal as untimely under Mississippi Rule of Appellate Procedure 2(a)(1). However, because this Court reaches the merits of the abatement *ab initio* issue, I believe we should abandon the bright line rules of **Gollott**, **Haines**, and **Berryhill**, and adopt a measured case-by-case analysis regarding whether dismissing a case as moot or abatement *ab initio* is appropriate.[20] In the present case, I agree that dismissing the appeal as moot is appropriate; given that Payton did not timely file his post-trial motions or his appeal, I fail to see how dismissing his appeal as moot would infringe upon his rights.

    **KITCHENS, P.J., JOINS THIS OPINION.**

---

[20]Of course, to avoid such a case-by-case review, the State or the attorney for the defendant may move for substitution. Miss. R. App. P. 43(a).